ORIGINAL

CC.DW

OF COUNSEL:
DAVIS LEVIN LIVINGSTON GRANDE

MARK S. DAVIS        1442-0
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, Hawai'i  96813
Telephone:  (808) 524-7500
Fax:  (808) 356-0418
Email:  mdavis@davislevin.com

Attorneys for Plaintiffs



FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 0 6 2006

at ____o'clock and 25 min ___M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN GAST, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE **ESTATE OF JACQUELINE GAST** AND AS GUARDIAN AD LITEM FOR HIS MINOR CHILD, **AMANDA RENEE GAST,** AND **BROOKE ASHLEY GAST**<br><br>PLAINTIFFS,<br><br>vs.<br><br>**SUNG KI KWAK,** DBA **SHIN JIN HAWAI`I TRAVEL & TOUR,** A HAWAI`I SOLE PROPRIETORSHIP; AND **CYNTHIA HATHAWAY,** AND **AKAL SECURITY, INC.,** A NEW MEXICO CORPORATION,<br><br>DEFENDANTS. | CIVIL NO. **04-00079 DAE-BMK** (WRONGFUL DEATH)<br><br>**PLAINTIFFS' REPLY MEMORANDUM TO**<br><br>**FEDERAL DEFENDANT NATIONAL PARK SERVICES' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT SUNG KI KWAK'S dba SHIN JIN HAWAII TRAVEL & TOUR'S EXPERT STEPHEN KEMBLE, M.D., AND DEFENDANT NATIONAL PARK SERVICE (USA)'S EXPERT MICHAEL STONE M.D.**<br><br>**AND**<br><br>**DEFENDANT AND THIRD-PARTY PLAINTIFFS SUNG KI KWAK'S dba SHIN JIN HAWAII TRAVEL  & TOUR'S AND** |

SUNG KI KWAK, DBA SHIN JIN
HAWAI`I TRAVEL & TOUR, A
HAWAI`I SOLE PROPRIETORSHIP; AND
CYNTHIA HATHAWAY,

                THIRD-PARTY PLAINTIFFS,

    vs.

NORWEGIAN CRUISE LINES,
INC. AND NATIONAL PARK
SERVICE,

                THIRD-PARTY DEFENDANTS
_____

NCL (BAHAMA) LIMITED,

                COUNTERCLAIM PLAINTIFF,

    vs.

NATIONAL PARK SERVICE
(USA),

                CROSS-CLAIM DEFENDANT
_____
NATIONAL PARK SERVICE
(USA),

                COUNTERCLAIM PLAINTIFF,

    vs.

JOHN GAST, INDIVIDUALLY AND AS
SPECIAL ADMINISTRATOR OF THE
ESTATE OF JACQUELINE GAST
AND AS GUARDIAN AD LITEM FOR HIS
MINOR CHILD, AMANDA RENEE
GAST, AND BROOKE ASHLEY
GAST, SUNG KI KWAK, DBA SHIN

CYNTHIA HATHAWAY'S
MEMORANDUM IN
OPPOSITION TO PLAINTIFFS'
MOTION TO EXCLUDE
DEFENDANT SUNG KI KWAK'S
dba SHIN JIN HAWAII TRAVEL
& TOUR'S EXPERT STEPHEN
KEMBLE, M.D., AND
DEFENDANT NATIONAL PARK
SERVICE (USA)'S EXPERT
MICHAEL STONE M.D.

DECLARATION OF MARK S.
DAVIS; EXHIBIT 1; AND
CERTIFICATE OF SERVICE

_Hearing_

Date :      December 28, 2005
Time :      9:00 a.m.
Judge :     Hon. David A. Ezra

TRIAL:    AUGUST 21, 2006

**JIN HAWAI`I TRAVEL & TOUR**, A HAWAI`I SOLE PROPRIETORSHIP; AND **CYNTHIA HATHAWAY**,

      COUNTERCLAIM DEFENDANTS.

**NATIONAL PARK SERVICE (USA),**

      CROSS-CLAIM PLAINTIFF,

  vs.

**NCL (BAHAMA) LIMITED**,

      CROSS-CLAIM DEFENDANT.

**PLAINTIFFS' REPLY MEMORANDUM TO**

**FEDERAL DEFENDANT NATIONAL PARK SERVICES' OPPOSITION TO PLAINTIFFS'MOTION TO EXCLUDE DEFENDANT SUNG KI KWAK'S dba SHIN JIN HAWAII TRAVEL & TOUR'S EXPERT STEPHEN KEMBLE, M.D., AND DEFENDANT NATIONAL PARK SERVICE (USA)'S EXPERT MICHAEL STONE M.D.**

**AND**

**DEFENDANT AND THIRD-PARTY PLAINTIFFS SUNG KI KWAK'S dba SHIN JIN HAWAII TRAVEL  & TOUR'S AND CYNTHIA HATHAWAY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT SUNG KI KWAK'S dba SHIN JIN HAWAII TRAVEL & TOUR'S EXPERT STEPHEN KEMBLE, M.D., AND DEFENDANT NATIONAL PARK SERVICE (USA)'S EXPERT MICHAEL STONE M.D.**

In their motion to exclude filed September 19, 2005, Plaintiffs JOHN, AMANDA and BROOKE GAST argued that the two psychiatrist experts retained by Defendants should be excluded because their speculative testimony does not satisfy the requirements of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmacueticals, Inc.*, 509 U.S. 579 (1993).  Specifically, Plaintiffs explained that both experts improperly premised their conclusion on speculation as to Mrs. Gast's actions and motivations, and that Defendant National Park Service's ("NPS") expert, Dr. Michael Stone, further stated his opinions in terms that would not be helpful to the trier of fact.

In response to the motion, both Defendants submit supplemental opinions from their experts, in violation of this Court's discovery order.   These

supplemental opinions are not timely and should not be considered in ruling on the admissibility of the experts' original opinions.  To add insult to injury, Dr. Kemble filed a second supplementary report dated November 30, 2005 (after Kwak had filed their opposition) and dramatically changed his opinion as discussed below. Kemble apparently attempts to argue in opposition to the Daubert motion, as he apparently sees his position as a lawyer rather than an expert physician.   Plaintiffs request that all of the supplementary reports be stricken and that the reports of Drs. Kemble and Stone be excluded as they are simply factual conjectures rather than appropriate scientific expert testimony.

In any event, Defendants have failed to address the arguments Plaintiffs presented in their original motion.  They have failed to point to facts – as opposed to speculation – that would support the experts' opinions, and they have failed to demonstrate that their opinions would be helpful to the jury.

On November 30, 2005 Judge Ezra denied Plaintiffs' Motion for Summary Judgment on the issue of comparative negligence.  However, he ruled because of the state of the evidence that the Plaintiffs will be entitled to a presumption that Mrs. Gast acted with due care.  Although he also ruled that the presumption could be rebutted at trial, he discussed the state of the eye witness testimony and the factual issues going to the jury totally ignoring the type of speculative "expert" testimony that seems to form the basis of Defendants' comparative negligence

defense. For the Court's convenience, the Court's 17 page order is attached as an exhibit.

## I.     DEFENDANTS CANNOT RELY ON UNTIMELY SUPPLEMENTAL OPINIONS TO OPPOSE THE MOTION TO EXCLUDE THEIR EXPERTS' ORIGINAL OPINIONS

Kwak and NPS have both tendered supplemental opinions by their experts in their Oppositions to Plaintiffs' Motion to Exclude. These supplemental opinions are untimely and should not be considered. This Court's deadline by which expert reports should be submitted had long passed. If Defendants sought to amend the order to allow additional expert submittals, they were required to file a motion demonstrating good cause for the modification. *Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604 (9th Cir. 1992). Neither did so.

Allowing submission of these untimely expert reports would result in tremendous prejudice to Plaintiffs. This Court may consider prejudice to the opposing party in considering whether the motion to amend the scheduling conference order to allow supplemental expert testimony should be allowed. *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95 (D.D.C. 2005). In *Dag* the Court noted that allowing the supplemental reports would prejudice defendants, who had " incurred significant expense in (1) discovery; (2) evaluating Plaintiffs' experts' reports; (3) offering their own expert's report; (4) deposing Plaintiffs' experts; and (5) preparing substantive *Daubert* motions to challenge certain reports

proffered by plaintiffs' experts." 226 F.R.D. at 111. Similar prejudice exists here.

While Plaintiffs did not secure an expert to rebut the challenged testimony, they

did make their decision regarding the need for a rebuttal expert on the basis of

Defendants' original expert reports. Plaintiffs incurred the substantial expense of

deposing Dr. Stone as to his original opinions, and also expended time and

resources preparing their *Daubert* motion. Defendants did not seek to supplement

their expert opinions until after the *Daubert* motion was filed, and it appears that

the basis for supplementation was specifically to address the deficiencies in the

original opinions which were pointed out in Plaintiffs' original motion.[1]

---

[1] Defendants suggest that the experts' supplemental opinions were generated in order to take into account the medical records of Dr. Magruder. Production of Dr. Magruder's records would not justify this untimely submission. Magruder's records were available for review on or about August 23, 2005, long before the cutoff for motions and discovery in this case (October 15, 2005). To the extent the new records warranted supplementation of expert opinions, Defendants should have sought to do so on a timely basis to avoid prejudice to Plaintiffs. Moreover, the fact that Defendants did not seek to timely supplement their expert reports when they received the Magruder records suggests that those records did not alter the experts' opinions. What apparently altered the experts' opinions and compelled them to produce supplemental opinions was the Motion to Exclude filed by Plaintiffs. In fact, Dr. Stone was provided with Plaintiffs' motion and actually responds to it by recasting his opinions. Dr. Stone was also provided with other records, including some generated before his original report and others from witnesses within NPS' control, to answer Plaintiffs' objections. Plaintiffs submit that this second opinion, responding to Plaintiffs' motion and based on evidence that would have been available to Dr. Stone prior to issuance of his original opinion, goes far beyond any supplement that would have been warranted in response to the Magruder records. Likewise, Dr. Kemble provided two supplementations and actually changed his opinion in the second one.

This reply will address the subjects of Plaintiffs' original motion: Doctors' Stone and Kemble's original expert reports. For the reasons stated herein and in Plaintiffs' motion, those reports do not meet the standards for reliability and admissibility established in *Daubert* and the Federal Rules of Evidence.

## II.    DR. KEMBLE'S CONCLUSION THAT MRS. GAST EXPERIENCED AN "ABRUPT CHANGE IN MENTAL    STATUS," DECIDED TO HIKE HALF A MILE AND   COMMIT SUICIDE IS BASED ON PURE SPECULATION

In their motion Plaintiffs cited Ninth Circuit case law and other federal court decisions for the proposition that opinion testimony that is based on speculation and conjecture is not reliable *and* will not aid the trier of fact. Specifically, they pointed to Dr. Kemble's conclusions that Mrs. Gast experienced an unwitnessed "abrupt change in mental status" and decided to hike half a mile and commit suicide as opinions wholly lacking in support in the record. As Plaintiffs have urged, no one knows how, why or in what manner Mrs. Gast left the parking area on the day of her disappearance. Kwak's Memorandum in Opposition claims that Dr. Kemble's report is based upon "review of Mrs. Gast's medical records and review of the testimony and records concerning October 14, 2002." Kwak Opp. at 8. However, there is no evidence that establishes what Mrs. Gast did or why she did it after Ammasi left at 10:30 a.m. Dr. Kemble's opinions that purport to fill in the missing events and motivations are neither reliable nor based on any accepted scientific method. The Court exercising its gatekeeper function should certainly

keep out Dr. Kemble's inflammatory speculation. Additionally, Dr. Kemble changes his testimony by providing the second supplementation dated November 30, 2005. Apparently he no longer feels that her "suicide" was the product of long held psychiatric problems but rather because she reasoned that "suicide would be better than facing her husband's anticipated anger."[2] This Dr. Kemble concluded was her "motive for suicide" but then goes on to opine she needed a means and decided to kill herself on hot lava based upon warnings in the Park brochure and warnings that Hathaway provided. He provided the following "scientific" explanation for his theory: "...the typical psychology of people with Borderline Personality Disorder, fear of her husband's anger would likely have led to thoughts of suicide." (Dr. Kemble's second supplementary report dated November 30, 2005 p. 4-5) Thus Kemble's outrageous speculation are all factual and do nothing more than pose a theory of what factually occurred when all parties, including Judge Ezra in his November 30 Order attached as Exhibit 1, have conceded that the facts, including her psychological state at the time of her death, remains completely unknown. As Dr. Stone candidly reported in his supplemental report: "We cannot know with any accuracy her psychological state on the fatal day. We cannot be sure whether there had been tension between her and her husband..." p. 16

---

[2] Of course there is no evidence that the Husband was angry at all.

6

Dr. Stone's supplementary report dated November 1, 2005, Exhibit A to Federal

Defendant's Opposition to Plaintiffs' Motion Exclude…"

Kwak also has not shown any basis for Dr. Kemble's opinion that the harm

sustained by Mrs. Gast "could not have been prevented by any reasonable possible

actions" of Defendants.  This testimony is purely speculative and completely

beyond Dr. Kemble's purported expertise.

Kwak claims that Plaintiffs do not attack Dr. Kemble's testimony as being

unhelpful to the trier of fact.  Kwak Opp. at 7.  In fact, Plaintiffs argued that

opinions based on conjecture are not helpful – in fact are particularly dangerous --

to the trier of fact.  As the _Daubert_ Court cautioned, "[c]onjectures that are

probably wrong are of little use … in the project of reaching a quick, final, and

binding legal judgment--often of great consequence--about a particular set of

events in the past." 509 U.S. at 597; _see also_ _Mink Mart, Inc. v. Reliance Insurance_

_Co._, 65 F.Supp.2d 176 (S.D.N.Y. 1993).  This admonition is particularly apt in this

case.  While the jury will be advised that it cannot guess or speculate concerning

the facts in this case, this admonition will have little meaning if Dr. Kemble is

allowed to present his speculations to the jury elevated on the pedestal of "expert"

opinion.

Kwak also claims that Dr. Kemble is competent to opine that "the testimony

of the Gasts about their family life is not consistent with the medical records

reviewed." Kwak Opp. at 5. This testimony is based on pure speculation, since Dr. Kemble did not examine the Plaintiffs and has no basis for judging their perceptions or memories. Plaintiffs submit that testimony by a mental health profession purporting to opine about the credibility of persons without examination is completely unreliable and would provide no assistance to the trier of fact. In *Figueroa v. Simplicity Plan de Puerto Rico*, 267 F.Supp.2d 161 (D.P.R. 2003), the court disallowed the opinions of a expert called to opine that the plaintiffs' mental distress as the result of mishandling of the corpse of a family member was not genuine, on the grounds the testimony was a speculative attack on plaintiffs' credibility without any scientific basis. This case provides an even stronger case for disallowance, since Dr. Kemble does not even purport to do thorough psychological profiles of Plaintiffs and only attacks their specific reaction to their mother's death.

## III.    DR. STONE'S CONCLUSIONS ARE BASED ON SPECULATION

In its Opposition, NPS claims that Dr. Stone based his conclusions on disputed facts. However, as previously stated, there are no facts which demonstrate how or why Mrs. Gast left the parking area or where she went when she did. Dr. Stone uses speculation to fill in the gaps, and this is not permissible under the law. Dr. Stone candidly admits in his supplementary report that he does not know "with any accuracy" her psychological state on the fatal day.

Therefore as he mentioned in his deposition, he was simply posing possibility of factual scenarios that could have occurred. He denied holding any of the factual scenarios to a reasonable degree of medical probability although in his supplemental report he attempted to cure the defect by concluding that her death was from an "accident brought about by her carelessness." This legal conclusion is not explained only that in his opinion, she was comparatively negligent in some unknown way.

NPS claims that Dr. Stone can use evidence from Mrs. Gast's past actions and her psychiatric condition to make predictions about her conduct on the day of the incident out of the realm of speculation. NPS Opp. at 6-8. However, under the Federal Rules of Evidence, prior acts and medical history cannot fill in the missing link with regard to Mrs. Gast's actions. Evidence that Mrs. Gast had suicidal thoughts and had difficulty with rage on occasion in the past is not relevant to showing what she did at the time of the incident when there is no proof she was suicidal or angry. Evidence that persons with bipolar disorder are often impulsive or careless is an impermissible attempt by Dr. Stone to introduce evidence of a character for impulsiveness and carelessness in order to show that Mrs. Gast acted in conformance with those character traits at the time of the incident. Fed. R. Evid. 404(a). Accordingly, the evidence from Mrs. Gast's medical records does not take Dr. Stone's opinions out of the realm of conjecture. This evidence is supposed to

bolster a burden of proof by Defendants that Mrs. Gast consciously and knowingly violated a standard of due care with regard to her own safety. But what she did, why she did it and whether she was consciously in control of her faculties are questions not answered or addressed.

To the extent Dr. Stone's conclusion that Mrs. Gast was "an accident waiting to happen" was based on her prior acts and medical history - it was irrelevant to matters at issue in this case. Expert Testimony which is not relevant is of no assistance to trier of fact. *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir.1996) ("[An expert's credentials and methodology may be impeccable, but if the proffered testimony fails the general test of relevance under Rule 402 . . . .then the district court should reject the proffer."). Since Dr. Stone claims that Mrs. Gast's character for impulsiveness and carelessness provides a basis for him to make a prediction about her actions on the day of the incident, his testimony is irrelevant as a matter of law under Federal Rule of Evidence 404(a). *Morin v. E.M. Loews, Inc.*, 498 A.2d 594 (Me. 1985) (proffered testimony of psychologist that security guard who allegedly shot customer at drive-in theater had a propensity for violence was inadmissible under Rule 404(a) as evidence offered to prove that security guard acted in conformity with such propensity in his confrontation with customer). Likewise, to the extent he attempts to guess at her actions based on prior instances of conduct, such as her rage episodes or her drug prescriptions, Dr.

Stone's testimony is *per se* irrelevant under Rule 404(b).  *Reyes v. Missouri Pacific Railroad Co.*, 589 F.2d 791 (5th Cir.1979) (evidence that plaintiff suffered from the disease of alcoholism and was intoxicated on four prior occasions is not admissible to show that he was intoxicated at the time he was injured).

Dr. Stone's testimony based on Mrs. Gast's history of mental disorder is also unduly prejudicial.  *Klein v. Vanek*, 86 F.Supp.2d 812 (N.D. Ill. 2000) (court disallows expert testimony on plaintiff's bipolar disorder as unduly prejudicial and not sufficiently related to matters at issue).  Courts routinely reject testimony regarding mental illness where there is a meaningful risk that the trier of fact would judge plaintiff on the basis of  her mental illness rather that her conduct at the time.  *Rascon v. Hardiman*, 803 F.2d 269, 278 (7th Cir.1986).  That risk is certainly present here – in fact Dr. Stone's opinion invites the trier of fact to draw inferences about Mrs. Gast's conduct from the fact of her mental disorder – inferences which are not permissible under the law.

## IV.   DR. STONE'S TESTIMONY WOULD NOT ASSIST THE TRIER OF FACT

Dr. Stone admitted to uncertainty as to what happened to Mrs. Gast on the day of the incident, but he did speculate that she had "wandered off" and he opined that it was likely that her death was

> not a pure accident (like being rear-ended by a drunk
> driver or being struck by a stone from the roof of a
> building), but rather was an accident that was, as it were,

> waiting to happen – in a woman with several risk factors
> that raised the likelihood for such an occurrence: her
> bipolar illness, her tendency to get lost and to suffer ill
> effects from exposure to severe heat, the latter possibly
> aggravated by some of her medications.

Stone Report at 9. Plaintiffs pointed out that this opinion would not aid the trier of fact, who was called upon to determine whether Mrs. Gast's actions demonstrated an absence of reasonable care, not whether her acts were a "pure accident."

Looking more closely at Dr. Stone's "pure accident – accident waiting to happen" distinction, it is patently clear that this opinion will not help the jury evaluate the reasonableness of Mrs. Gast's conduct. First, it does not help the jury to opine about Mrs. Gast's conduct when the conduct itself cannot be established from the record. Second, not all of the potential causes which Dr. Stone would consider an "accident waiting to happen" (i.e., attributable to Mrs. Gast's risk factors) would amount to unreasonable conduct on her part. For example, if Mrs. Gast became disoriented as a result of her tendency to suffer ill effects from heat, this would not indicate negligence on Mrs. Gast's part. Thus, to the extent that Dr. Stone does no more than opine that Mrs. Gast's risk factors may have contributed to the incident, that testimony does not bear a sufficient "fit" to the matters at issue herein. _Goodwin v. Danek Medical, Inc.,_ 1999 WL 1117007, at 4 (D. Nev. 1999).

NPS does not address Plaintiffs' argument that Dr. Stone's opinion that Mrs. Gast is an "accident waiting to happen" is not helpful to the trier of fact. Instead,

NPS mischaracterizes the opinion:

> The sum of these historic and largely undisputed facts,
> when considered by a medical specialist such as
> Dr. Stone, leads to a fair inference that Mrs. Gast, of all
> parties, knew best her own medical history as well as her
> physical disabilities, and knew or should have known of
> the significant limitations imposed on her at the lava site.
> Thus, Mrs. Gast's act of leaving a safe area at the site, the
> kiosk/ranger station area, must be viewed in light of tort
> law regarding contributory and comparative negligence.

NPS Opp. at 8. Leaving aside the issue of the above restatement would assist the

trier of fact, NPS' restatement bears no resemblance in form or content to Dr.

Stone's opinion that Mrs. Gast was "an accident waiting to happen." NPS'

attempted revision is improper, since Dr. Stone is not free to re-formulate his

opinions in order to avoid legitimate objections raised by the Plaintiffs.[3]

## V.    CONCLUSION

For the reasons stated here and in Plaintiffs' motion to exclude the original

expert reports of Doctors Kemble and Stone should not be allowed. Moreover, this

Court should not consider the experts' supplemental opinions, since their untimely

submittal results in substantial prejudice to Plaintiffs. As Judge Ezra ruled in his

Order denying Plaintiffs' Motion for Summary Judgment: "Plaintiffs meanwhile

contend that there is an absence of proof as to why Mrs. Gast was not present at the

---

[3] In this case NPS actually provided Dr. Stone with Plaintiffs' motion so that he could cure the defects in his opinions in his supplemental opinions. Plaintiffs submit that this is wholly improper, and provides an independent basis for disregarding his supplemental opinions and a prohibition to changing his opinions.

pavilion when her group returned.  Thus it cannot be determined whether her disappearance was involuntary or a negligent act.  Plaintiffs postulate that in spite of Defendants' theories about how Mrs. Gast ended up in a closed area of the park, it is equally as plausible that Mrs. Gast either became disoriented or suffered a debilitating anxiety attack and returned to the pavilion only to find that her group had already left or that she returned to the Mauka trail to find her group and became disoriented there…. Factual disputes exist as to what happened during the 20 hours that she was missing.  Taking the facts in the light most favorable to the nonmoving party, this Court cannot decide, as a matter of law, that Mrs. Gast was not contributorily negligent… Thus, even though the presumption of due care applies, this Court cannot determine whether the presumption is rebutted in this case…" Judge Ezra's Order Denying Plaintiffs Motion For Summary Judgment on the Affirmative Defense of Comparative Negligence.

Conspicuous and perhaps quite revealing in its absence, is any argument submitted by the Defendants that their experts would provide any admissible evidence of her own comparative negligence.

DATED:  Honolulu, Hawaii  January 6, 2006.


MARK S. DAVIS
Attorney for Plaintiffs


14