IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN GAST, individually, and as Special Administrator of the Estate of JACQUELINE GAST, and as Guardian Ad Litem for his minor child, AMANDA RENEE GAST, and BROOKE ASHLEY GAST,<br><br>    Plaintiffs,<br><br>    vs.<br><br>SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship, CYNTHIA HATHAWAY, and AKAL SECURITY, INC., a New Mexico Corporation,<br><br>    Defendants.<br><hr>SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship; CYNTHIA HATHAWAY,<br><br>    Third-Party Plaintiffs,<br><br>    vs.<br><br>NORWEGIAN CRUISE LINES, INC. and NATIONAL PARK SERVICE,<br><br>    Third-Party Defendants. | CV NO 04-00079 DAE-BMK<br><br>FILED IN THE<br>UNITED STATES DISTRICT COURT<br>DISTRICT OF HAWAII<br><br>NOV 30 2005<br><br>at 8 o'clock and 50 min. A.M<br>SUE BEITIA, CLERK |

EXHIBIT __1__

|  |  |
|---|---|
| NCL (BAHAMA) LIMITED, | ) |
| Cross-claim Plaintiff, | ) |
| vs. | ) |
| NATIONAL PARK SERVICE (USA), | ) |
| Cross-claim Defendant. | ) |
| NATIONAL PARK SERVICE (USA), | ) |
| Counterclaim Plaintiff, | ) |
| vs. | ) |
| JOHN GAST, individually, and as Special Administrator of the Estate of JACQUELINE GAST, and as Guardian Ad Litem for his minor child, AMANDA RENEE GAST, and BROOKE ASHLEY GAST, SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship; and CYNTHIA HATHAWAY, | ) |
| Counterclaim Defendants. | ) |
| NATIONAL PARK SERVICE (USA), | ) |

```
           Cross-Claim Plaintiff,    )
                                     )
    vs.                              )
                                     )
                                     )
    NCL (BAHAMA) LIMITED,            )
                                     )
           Cross-Claim Defendant.    )
                                     )
_____ )
```

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE AFFIRMATIVE DEFENSE OF CONTRIBUTORY NEGLIGENCE

The Court heard Plaintiffs' Motion on November 28, 2005. Mark Davis, Esq., appeared at the hearing on behalf of Plaintiffs; April Luria, Esq., appeared at the hearing on behalf of Akal Security, Inc.; Dennis O'Connor, Sr., Esq. and Dennis O'Connor, Jr., Esq., appeared at the hearing on behalf of Defendants Sung Ki Kwak dba Shin Jin Hawaii Travel & Tour and Cynthia Hathaway; Jeffrey Portnoy, Esq. and Neill Tseng, Esq., appeared at the hearing on behalf of NCL (Bahama) Limited; and R. Michael Burke, Assistant United States Attorney, appeared at the hearing on behalf of National Park Service. After reviewing the motion and the supporting and opposing memoranda, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment regarding the affirmative defense of contributory negligence.

## BACKGROUND

This is a case involving Plaintiffs John Gast, the estate of Jacqueline Gast, and the children of the same (collectively "Plaintiffs"), Defendants Sung Ki Kwak, dba Shin Jin Hawaii Travel & Tour and Cynthia Hathaway (collectively "Kwak Defendants") and Akal Security, Inc. ("Akal") and Third Party Defendants NCL (Bahama) Limited[1] and National Park Service ("NPS"). On October 14, 2002, 45 year old Jacqueline Gast ("Mrs. Gast"), a passenger on the Norwegian Star, took a tour to Hawaii Volcanoes National Park that was conducted by Cynthia Hathaway ("Hathaway"). Mrs. Gast's husband, who had taken a prearranged helicopter tour that day, was unaware that Mrs. Gast went on the tour with Hathaway's group.

The tour departed Hilo Harbor at approximately 8:45 a.m.. After entering the park, Hathaway stopped at Volcanoes Observatory then proceeded to the end of Chain of Craters Road, where she dropped of the group and parked the van. Kwak Defendants allege that Hathaway provided her groups with precautionary instructions at the harbor (before people decide whether to join the tour) (Kwak Defs.' Concise Statement of Facts ("CSF") Re: Mem. in Opp. to Pls.'

---

[1] NCL (Bahama) Limited was incorrectly identified as Norwegian Cruise Lines, Inc.

Mot. for Partial Summ. J., Ex. A at 34, 35), immediately upon departure (Id.) and again as they traveled down Chain of Craters Road (Id. at 39, 40.) Plaintiffs claim that on the way to the park, Hathaway did not provide any precautionary information to the group. (Pls.' CSF in support of Pls' Mot. for Partial Summ. J., Ex. B at 10-11.) Mrs. Gast was wearing backless sandals and she had no hat or water with her. It was a particularly hot and "voggy" day, with no wind. It is claimed that in the past Mrs. Gast had become disoriented when she overheated and had suffered panic attacks.

The members of Hathaway's group had the option of waiting at a pavilion (kiosk), exploring on their own, or accompanying Hathaway on the marked trails. Gast, Hathaway and others on the tour walked on the mauka trail. The areas with hot lava were just a few feet away from the marked trails. Mrs. Gast walked slowly and around 30 feet into the trail, she decided that she did not want to proceed further. At that point, Hathaway told Mrs. Gast to return to the pavilion, which was visible from their then position on the trail, and wait for her there until the group reconvened at 11:00 a.m.. Mrs. Gast headed toward the pavilion and Hathaway never saw her again. Hathaway and the rest of the group returned to the pavilion at 11:00 a.m..

At approximately 10:30 a.m., Larry Ammasi ("Ammasi"), another tour driver, spoke to Mrs. Gast at the pavilion. Mrs. Gast requested a ride back to the ship because she realized that she made a mistake by going on the tour. She offered to pay Ammasi the same amount of money she paid to get to the park (in cash) but he refused for liability reasons. During their exchange, Ammasi asked Mrs. Gast if she needed medical assistance and she responded that she did not; just that she wanted to return to the ship. He noted that she did not appear to be suffering from any physical impairments, confusion, exhaustion, anxiety or otherwise. After Ammasi explained that Mrs. Gast's tour group would be returning within 10 to 15 minutes, Mrs. Gast proceeded to wait by her group's van. That is the last time anyone saw Mrs. Gast alive.

Because Mrs. Gast was not present at the pavilion upon her group's return, group members, along with Hathaway, went back to the trails to search for her. Plaintiffs claim that while Christopher Chestnut, a group member, searched for Mrs. Gast on one of the trails, he was told by a park ranger to return to the pavilion because they were closing the park and that they were going to make everyone leave and go to the observatory. (Pls' CSF, Ex. B, at 29.) Plaintiffs also claim that there was a methane explosion during the time that the group visited the park (Id. at 30.) NPS denies that the trails were closed. (NPS CSF, Ex. A at

22; Ex. B.) Hathaway and the others stopped searching after approximately 20 to 30 minutes because other group members insisted on returning to the ship. Hathaway alerted a park employee that one of her passengers had not returned.

Sometime between 6:00 and 6:30 a.m. on October 15, 2002, a hiker named Brian Elms ("Elms") discovered Mrs. Gast's body around one-half mile north of the coastal shelter from Chain of Craters Road and 20 yards from the edge of the Western flow in a closed area of the park. She was lying on a recent lava flow in an area where molten lava was present two feet beneath the surface. Mrs. Gast's purse lay atop her body and contained, among other things, a camera. Photographs developed from the film in the camera portray various scenery of the park, including one photo of old lava abutting new lava with red lava in between, which is alleged to be consistent with the area where Elms discovered Mrs. Gast's body.

Kwak Defendants, NPS and Akal (joined by NCL) all contend that Mrs. Gast behaved recklessly and contributed to her death based on her past medical history. Plaintiffs assert that it is equally as plausible that Mrs. Gast suffered an anxiety attack and became disoriented. The fact remains that no one can provide direct evidence about what happened to Mrs. Gast between approximately 10:30 a.m. on October 14, 2002, to 6:30 a.m. on October 15, 2002.

Plaintiffs' Motion for Partial Summary Judgment regarding the affirmative defense of comparative negligence is now before this Court.

## STANDARD OF REVIEW

Federal Rules of Civil Procedure 56(c) requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Depot of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court "those portions of the

materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

9

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

Plaintiffs argue that, under Hawaii law, they are entitled to a presumption that Mrs. Gast acted with due care and that Defendants lack sufficient evidence to meet their burden of proving comparative negligence. NPS counters that the presumption is unavailable to Plaintiffs because of direct eyewitness, physical, and circumstantial evidence tending to show that Mrs. Gast was negligent. Kwak Defendants similarly argue that the presumption does not apply and that even if it does, evidence of Mrs. Gast's negligence overcomes such a

presumption. Akal (joined by NCL) also asserts that the presumption does not apply or that evidence of Mrs. Gast's negligence rebuts the presumption.

In Hawaii, a presumption of due care is available to a deceased[2] plaintiff or one suffering from amnesia.

> In the absence of eyewitness testimony, physical evidence, or both, to the contrary, a person who suffers from retrograde amnesia as a result of an accident and is, therefore, unable to testify as to the events of the accident is entitled to an instruction stating that he is presumed to have been exercising due care at the time of the accident and is not held to a high degree of proof as would be a plaintiff who could describe the occurrence himself.

Sherry v. Asing, 56 Haw. 135, 152, 531 P.2d 648, 660 (1975); Murakami v. County of Maui, 69 Haw. 43, 43, 731 P.2d 787, 787 (1987). While a plaintiff's burden is not as high, a "plaintiff must still produce sufficient evidence to constitute a prima facie case." Sherry, 56 Haw. at 152, 531 P.2d at 660. The presumption may be rebutted by circumstantial or other evidence. Id. Where an eyewitness is available to fully testify to facts that would otherwise be presumed, the presumption is not available to a plaintiff. Id. at 152-53, 531 P.2d at 660. "However, the mere fact that an eyewitness was present is not enough to annul the

---

[2] The Hawaii Supreme Court noted that the presumption in favor of amnesia victims is analogous to presumptions in favor of decedents. Sherry v. Asing, 56 Haw. 135, 153, 531 P.2d 648, 660 (1975).

presumption. The eyewitness <u>must have had sufficient time to observe</u> whether the injured or deceased person was <u>exercising due care in the crucial seconds before, and during, the accident</u>." <u>Id.</u> at 153, 531 P.2d at 660 (emphases added).

Defendants argue that the presumption does not apply but if it does, that it can be overcome by evidence of Mrs. Gast's negligence. Despite of all of the evidence that Defendants discuss in their Memoranda in Opposition, there is an absence of eyewitness testimony that can speak to what actually happened to Mrs. Gast after Ammasi spoke to her at the pavilion. It is only clear that Gast somehow ended up one-half mile from the pavilion. NPS incorrectly claims that Ammasi satisfies the <u>Sherry</u> eyewitness requirement. In <u>Sherry</u>, the eyewitness, defendant-appellee, observed that the plaintiff-appellant was not in the cross-walk when he was struck by a vehicle. <u>Id.</u> at 154, 531 P.2d at 661. This testimony was corroborated by physical evidence at the accident scene. <u>Id.</u> In this case, Ammasi did not observe the accident or events surrounding Mrs. Gast's death. As such, he does not satisfy the <u>Sherry</u> eyewitness requirement.

Even Akal admits that "none of the Defendants can provide eye witness testimony as to Mrs. Gast's actions after she spoke with Larry Ammasi."[3]

---

[3] Akal makes the statement with regard to its argument that all the parties are on equal footing which thus negates the necessity for applying the presumption of due care. In fact, the parties are not on equal footing. Defendants all present

12

(Def. Opp. at 10.) The Hawaii Supreme Court has made it clear that the only way to annul the presumption is to present an eyewitness who can testify to the exercise (or not) of due care immediately before or during the accident. Id. at 153, 531 P.2d at 660. It is undisputed that the last person who saw Mrs. Gast alive was Ammasi, but that was around 20 hours prior to the discovery of her body. Because none of the Defendants are able to produce an eyewitness who observed Mrs. Gast at any time during those 20 hours, much less immediately prior to or during the accident, the presumption applies in this case.

Although the presumption applies here, it can be rebutted by Defendants through the use of circumstantial and other evidence. All defendants offer the following undisputed evidence as proof of Mrs. Gast's negligence: 1) she was at the pavilion; 2) she was instructed to meet the group at 11:00 a.m.; 3) she left the pavilion after speaking to Ammasi; 4) her body was discovered one-half mile from the pavilion in a closed area of the park with half of an intact cigarette

---

theories that Mrs. Gast was negligent. But Mrs. Gast, the only person who could testify to what actually occurred, is deceased. Because she cannot defend herself against Defendants's allegations, the presumption is appropriate. See McQuay v. Schertle, 730 A.2d 714, 740 (Md. App. 1999) ("[T]he presumption levels the playing field in those cases in which the decedent's conduct is under attack but, as a consequence of the accident itself, he is unable to defend himself.").

13

between her fingers. Additionally, Defendants commonly point out that Mrs. Gast was aware of her mental disorder, history of panic attacks and that she was prescribed numerous medications for these conditions. Last, they assert that three park rangers were on duty at the eruption site, one at the ranger station, and a NPS van was parked in open view by the pavilion.

NPS specifically cites the following as evidence of Mrs. Gast's negligence: 1) Mrs. Gast did not inform her husband of her planned departure and that she left the ship immediately after her husband departed for his tour; 2) Mrs. Gast was aware of her lack of hiking experience, poor physical shape, unpreparedness for hiking, and tendency to experience dizziness when exposed to heat; 3) Mrs. Gast was aware of her history of taking dangerous risks when stressed or angry, even engaging in self-destructive behavior, such as speeding and cocaine abuse; 4) it is highly improbable that any adult could become disoriented at the kiosk area and wander away; 5) Mrs. Gast did not leave notes for anyone at the kiosk area, van, or ranger shack; and 6) circumstantial evidence indicates that Mrs. Gast voluntarily walked out to the location where she was found and lost consciousness, which is the "real cause" of her death, as opposed to thermal burns and hyperthermia.

Kwak Defendants offer the following as evidence of Mrs. Gast's negligence: 1) Hathaway provided information to Mrs. Gast concerning the area visited and how to safely interact with the area, including information about water and overheating; 2) park rangers claim that the closed area was properly marked and that there were no hiking signs in the area; and 3) Kwak Defendants' expert witness opines that Mrs. Gast left the pavilion, went to a closed area of her own volition and committed suicide.

Akal (joined by NCL) supports its position that Mrs. Gast was negligent with the following evidence: 1) a photograph developed from the camera found in Mrs. Gast's purse depicts scenery consistent with the area where her body was located and 2) the area mauka of the road was closed on October 14, 2002, marked by at least three brown "area closed" signs posted approximately 30 feet apart along the road.

Plaintiffs meanwhile contend that there is an absence of proof as to why Mrs. Gast was not present at the pavilion when her group returned. Thus, it cannot be determined whether her disappearance was involuntary or a negligent act. Plaintiffs postulate that in spite of Defendants' theories about how Mrs. Gast ended up in a closed area of the park, it is equally as plausible that Mrs. Gast either

became disoriented or suffered a debilitating anxiety attack and returned to the pavilion only to find that her group had already left or that she returned to the mauka trail to find her group and became disoriented there.

A few facts are undisputed. Mrs. Gast was safely at the pavilion approximately 15 to 30 minutes before her group's return, she left the pavilion and her body was discovered some 20 hours later one-half mile from the pavilion in a closed area of the park. Factual disputes exist as to what happened during the 20 hours that she was missing. Taking the facts in the light most favorable to the nonmoving party, this Court cannot decide, as a matter of law, that Mrs. Gast was not contributorily negligent. The evidence presents a sufficient disagreement such that the issue must be submitted to a jury. Thus, even though the presumption of due care applies, this Court cannot determine whether the presumption is rebutted in this case. Rather, Defendants, through their evidence, have presented a genuine issue of material fact as to Mrs. Gast's contributory negligence and summary judgment is inappropriate.

## CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment regarding the affirmative defense of contributory negligence, but does find that the presumption of due care will apply at trial.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, NOV 30 2005.

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

John Gast, et al. v. Sung Ki Kwak, et al., CV No. 04-00079 DAE-BMK; ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE AFFIRMATIVE DEFENSE OF CONTRIBUTORY NEGLIGENCE