

March 27, 2005

Dennis O'Connor Junior
c/o Reinwald, O'Connor, & Playdon
733 Bishop Street
24th Floor, Makai Tower
Honolulu, Hawaii  96813

**Re: Gast vs. Sung Ki Kwak, et al.**

Dear Mr. O'Connor:

The purpose of this letter is to briefly summarize my findings and opinions to date as to the contributing factor(s) and root cause(s) of Mrs. Gast's death, within the scope of my analysis as discussed below.  In short, the issues at hand, as they pertain to my expertise, fall within the field of risk management.  In preparing this preliminary report I have reviewed the file material your office provided me including:

1.  Complaint filed 2/3/04

2.  Expert report and CV of Plaintiff's expert, Dr. Elizabeth Tam

3.  Depositions for:
    A.  Cynthia Hathaway taken 8/30/04
    B.  Cynthia Hathaway taken 11/12/04
    C.  Taures Garcia
    D.  Amanda Renee Gast
    E.  Brooke Ashley Gast
    F.  Raymond Johnson, MD.
    G.  Sharon Weiler
    H.  John Gast (Volumes 1 & 2)
    I.  Jamie Kailiawa
    J.  Larry Ammasi
    K.  Martha Woods

4.  Records from:
    A.  Hilo Medical Center
    B.  Hawaii County Police Department
    C.  Gulf Coast Hospital

**EXHIBIT** " D" 104 West Riverside • Spokane, WA 99201 • 509-624-3714 telephone/fax

    D. Acme Communications
    E. Tampa Pathology Laboratory
    F. DNA Connection
    G. Akal Security
    H. State of Hawaii, Dept. of Transportation, Harbors Division
    I. Michael Andersen, D.D.S.
    J. Lee Memorial Park Funeral Home
    K. Douglas Kelley, M.D. (Chief Medical Examiner)
    L. Raymond A. Johnson, M.D. (2)
    M. Lee Memorial Health Systems (4)
    N. Joseph Salaz, M.D.
    O. Joseph Salas, M.D.

5. Third-Party Defendant NCL (Bahama) Limited's Response to Plaintiffs' First Request for Production of Documents dated 11/10/04

6. Plaintiffs Document Index

7. National Park Document Index

8. Interrogatory Responses by Plaintiffs

Attached as an exhibit to this report is a copy of my CV that highlights my training, experience, and expertise as it pertains to safety and risk management, along with a list of my publications. Also attached is a listing of my sworn testimony for the past 5 years. Please note that my fees for work on this matter, including trial, is $270/hour plus expenses; deposition fees are $300/hour with a minimum 2.5 hour charge. Commercial travel time is billed at half-rate.

I have extensive experience in safety and risk management. I have provided consulting services to private industry and businesses in safety and risk management. I have also served as an accident reconstructionist and expert witness on literally hundreds of safety and risk management cases both nationally and internationally. As noted in my CV, I am board certified in Human Factors and I am a certified Tribometrist.

The principles and techniques of safety and risk management have long been used by businesses, commercial enterprises, and governmental agencies to control foreseeable hazards. While there are a variety of different techniques and step-by-step approaches, there are five key steps to virtually any risk management program: Hazard Identification, Plan Development, Implementation, Evaluation, and Documentation.

It is beyond the scope of this preliminary letter to delve into a comprehensive analysis and discussion of safety and risk management. Suffice it to say that each of the defendants should have had a properly designed and implemented safety and risk management program; of particular importance for the primary issues in this case is establishing the protocol for hazard communications. In short, had each of the

defendants properly designed and implemented a basic safety and risk management program, this accident could have been prevented.

That is not to imply that Mrs. Gast's actions and/or inactions were not a contributing factor(s) as well; in fact, as discussed later in this report, it is my opinion that Mrs. Gast's actions and/or inactions were also contributing factors.

Based on my analysis to date it is my opinion that there were a number of contributing factors and root causes to Mrs. Gast's accidental death. The scope of my analysis is limited to that of the defendants the National Park Service, AKAL Security, and Norwegian Cruise Lines, as well as the plaintiff. I have briefly summarized my findings for these parties in the remainder of this preliminary report.

**National Park Service**
Based on past experiences, the National Park Service (NPS) does have a documented risk management program; however the details of that program have not been made available to date. Thus, at this time I cannot opine as to whether the unsafe conditions/procedures at the park are a result of a defective program, the failure to properly implement and/or enforce the existing program, or both. However, based on the data available to date, as well as my own personal experiences from having visited Volcanoes National Park, including hiking at the end of Chain of Craters Road, it is my opinion that there were a number of defects of the NPS safety and risk management practices that were contributing factors and/or root causes to this accident, including:

1. Failure to provide proper warnings to the visiting public;
2. Failure to effectively warn of known hidden hazards;
3. Failure to provide warnings at the proper times and/or locations;
4. Failure to provide proper training, particularly to their maintenance staff, with respect to identification of emergency and/or hazardous events and the proper protocol that should be followed;
5. Failure to establish and/or maintain effective lines of communications amongst its employees, as well as outside groups and/organizations.

**AKAL Security**
As discussed previously, AKAL Security (AKAL) should have had a risk management program in place in order to ensure the safety of the cruise line passengers and its employees alike. Based on the discovery to date, AKAL failed to conform to this standard of care; this failure resulted in unsafe business practices that were contributing factors and/or root causes to this accident including:

1. Failure to properly train its employees to identify emergency/hazardous conditions or events;
2. Failure to establish a proper protocol for its employees when responding to an emergency/hazardous event;
3. Failure to train its employees regarding proper data collection and documentation when encountering an emergency/hazardous event;
4. Failure to establish proper lines of communications amongst its employees;

5. Failure to establish proper lines of communications with other key entities such as the cruise lines, Harbor Security, police, search and rescue, and so forth;

6. Failure to establish and/or properly enforce emergency response protocols, particularly for the undeniably foreseeable occurrence of late, stranded, or missing passengers.

## Norwegian Cruise Lines

As discussed previously, Norwegian Cruise Lines (NCL) should have had a risk management program in place in order to ensure the safety of its passengers and employees alike. Based on the discovery to date, NCL failed to conform to this standard of care; this failure resulted in unsafe business practices that were contributing factors and/or root causes to this accident including:

1. Failure to properly train its employees to identify emergency/hazardous conditions or events;

2. Failure to establish a proper protocol for its employees when responding to an emergency/hazardous event;

3. Failure to train its employees regarding proper data collection and documentation when encountering an emergency/hazardous event;

4. Failure to establish proper lines of communications amongst its employees;

5. Failure to establish proper lines of communications with other key entities such as port side security, Harbor Security, police, search and rescue, and so forth;

6. Failure to establish and/or properly enforce emergency response protocols, particularly for the undeniably foreseeable occurrence of late, stranded, or missing passengers;

7. Failure to properly solicit/collect critical information in a meaningful and timely manner for a know emergency/hazardous event;

8. Failure to properly monitor/record the flow of its passengers on/off the vessel;

9. Departing from port when it knew or should have known that one of its passengers with acute medical needs was either stranded or likely stranded on-shore.

## Mrs. Gast

As a private individual, Mrs. Gast would not be expected to comply with the basic principles of a safety and risk management program. However, as a reasonable and prudent adult, Mrs. Gast can and should be expected to behave in a manner that would not knowingly expose her to undue risks. Of particular concern, are Mrs. Gast's errors of omission and commission given her various physiological and psychological limitations, which she was fully aware of prior to her departure from the pier and at various points in time throughout the day, including:

1. Failing to inform anyone of her change in plans;

2. Failing to inform anyone of her intended destination and anticipated return time;

3. Choosing to engage in an activity that was contraindicated (i.e. hiking, in the heat, with additional stressors such as time and being alone, etc.) given her physiological and psychological limitations;

4. Failing to inform the tour guide or others of her limitations and special needs;
5. Leaving a point of safety when she knew or should have known that her tour guide would be returning shortly (i.e. within approximately 15 minutes).

As noted previously, discovery is ongoing in this matter. As such, I do reserve the right to supplement this report as additional information is made available. Please feel free to contact me should you have any questions.

Sincerely,

Richard T. Gill, Ph. D., CHFP, CXLT
Chief Scientist