IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN GAST, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE **ESTATE OF JACQUELINE GAST** AND AS GUARDIAN AD LITEM FOR HIS MINOR CHILD, **AMANDA RENEE GAST,** AND **BROOKE ASHLEY GAST**<br><br>PLAINTIFFS,<br><br>vs.<br><br>**SUNG KI KWAK,** DBA **SHIN JIN HAWAI`I TRAVEL & TOUR,** A HAWAI`I SOLE PROPRIETORSHIP; AND **CYNTHIA HATHAWAY,** AND **AKAL SECURITY, INC.,** A NEW MEXICO CORPORATION,<br><br>DEFENDANTS.<br><br>**SUNG KI KWAK,** DBA **SHIN JIN HAWAI`I TRAVEL & TOUR,** A HAWAI`I SOLE PROPRIETORSHIP; AND **CYNTHIA HATHAWAY,**<br><br>THIRD-PARTY PLAINTIFFS,<br><br>vs.<br><br>**NORWEGIAN CRUISE LINES, INC.** AND **NATIONAL PARK SERVICE,**<br><br>THIRD-PARTY DEFENDANTS | CIVIL NO. **04-00079 DAE-BMK** (WRONGFUL DEATH)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

**NCL (BAHAMA) LIMITED**,

       Counterclaim Plaintiff,

vs.

**NATIONAL PARK SERVICE (USA)**,

       Cross-Claim Defendant

**NATIONAL PARK SERVICE (USA)**,

       Counterclaim Plaintiff,

vs.

**JOHN GAST**, Individually and as Special Administrator of the **ESTATE OF JACQUELINE GAST** and as Guardian Ad Litem for his minor child, **AMANDA RENEE GAST**, and **BROOKE ASHLEY GAST, SUNG KI KWAK**, dba **SHIN JIN HAWAI`I TRAVEL & TOUR**, a Hawai`i Sole Proprietorship; and **CYNTHIA HATHAWAY**,

       Counterclaim Defendants.

**NATIONAL PARK SERVICE (USA)**,

       Cross-Claim Plaintiff,

vs.

**NCL (BAHAMA) LIMITED**,

       Cross-Claim Defendant.

## MEMORANDUM IN SUPPORT OF MOTION

The Plaintiffs hereby ask this Court to exclude at trial any reference to Mrs. Gast's prior history of cocaine abuse and alcohol use, as well as the specific names and characteristics of the medications that were prescribed for her at the time of her death. Such references would unfairly prejudice the jury, implying that Mrs. Gast was a bad person who had current drug or alcohol problems, when she did not, or that her medications played any role in her death, which they were not. Evidence as to her past drug use and prescriptions is both irrelevant, and thus not admissible under FRE 401, and unfairly prejudicial, and thus excludable under FRE 403. In addition, presentation of this irrelevant information would unduly delay these proceedings. This motion does not apply to any prescription drugs Defendants can prove she had ingested from appropriate autopsy lab findings. This motion applies only to those medication(s) for which there is no evidence of her having ingested.

I. **CONTROLLING LAW**

Rule 402 of the Federal Rules of Evidence provides in pertinent part that "[e]vidence which is not relevant is not admissible." FRE 403 provides that:

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice confusion of the issues, or misleading the jury, or by considerations of undue delay,

3

      waste of time, or needless presentation of cumulative evidence.

In other words, there is a line to be drawn when the potentially inflammatory nature of the information exceeds its probative value. A trial court's duty is to balance these factors, to ensure that the primary effect of evidence is to advance an issue in the case rather than to appeal to the jury's emotions or "arous[e] its sense of horror, provok[e] its instinct to punish, or trigge[r] other mainsprings of human action [that] may cause a jury to base its decision on something other than the established propositions in the case. 1 J. Weinstein & M. Berger, Weinstein's Evidence Section 403[03], at 403-33-39 (1991).

Application of these principles in the case at hand requires the exclusion of any reference to Mrs. Gast's long past prior history of cocaine abuse and alcohol use, as well as the specific names and characteristics of the prescription medications she was taking or considering taking at the time of her death.

## II. JACKIE GAST DIED IN AN ACTIVE LAVA FLOW FIELD, AFTER HER TOUR VAN LEFT WITHOUT HER.

Nobody knows what happened to Mrs. Gast between the time she was last seen near the tour van around 10:30 am on October 14 and the time her body was discovered the following morning, other than that she died and her body was significantly burned and charred. There were no eyewitnesses or physical evidence as to how her body came to rest where it did. In the absence of any actual

evidence, the law in this jurisdiction presumes that Mrs. Gast acted prudently. See *Murakami v. County of Maui*, 69 Haw. 43, 731 P.2d 387 (1987); *Sherry v. Asing*, 56 Haw. 135, 531 P.2d 648 (1975).

It is apparent from the expert reports obtained by the Defendants that they may try to overcome this presumption of prudence by painting Mrs. Gast as some kind of bad, unstable person. Defendants may attempt to refer to her prior reported history of drug or alcohol use – even though she had no recent history of either. In addition, they may try to suggest that her prescription medication regime, though stable and longstanding, somehow played a role in her death. They may also try to imply that she was suicidal because she asked her treating internist about a powerful pain killer called Actiq, even though it was never prescribed or she never took it. All of this evidence is likely to be confusing, time-consuming, irrelevant to any issue, and highly prejudicial to the Plaintiffs. Therefore, it should be excluded.

The medical records in this case have been reviewed and discussed in expert reports by numerous expert witnesses. In addition, the depositions of Mrs. Gast's treating physicians have been taken. Not one of these potential witnesses has tied drugs, alcohol, or prescription medicines to the events at issue here. Nor is there any evidence with regard to Actiq other than a note that Mrs. Gast asked her doctor about a prescription for it which was denied.

Several of the experts noted that a toxicology report based on a comprehensive drug screen performed shortly after her death indicated that Mrs. Gast **did not have any** drugs in her blood at the time of her death. (Exhibit 1). This fact alone demonstrates the irrelevance of any past history of drug or alcohol use. Alcohol and illicit drugs played no role in her death, and mentioning them could serve no purposes other than to inflame or prejudice the jury.

While there are references in her medical records to historical drug or alcohol use, those records also show that Mrs. Gast had not abused alcohol or used illegal drugs at any time relevant to the instant action. Her treating physician stated that in his three years of treating her, he did not see any evidence of any problem with cocaine or any other illicit drug. (Exhibit 2: Johnson Depo., 85: 9-12). Dr. Kemble, expert for the Kwak Defendants[1], notes a "history of cocaine abuse many years ago, and episodic alcohol abuse up to at least the 1990s "although apparently that was not much of an issue in the last few years before her death." (Exhibit 3: Kemble Report at page 2). At pages eight and nine, he comes up with several theories "to explain Mrs. Gast's death" – each of which centers on the idea that Mrs. Gast committed suicide. None of these theories (which are

---

[1] Defendant Shin Jin Hawaii Travel and Tours has retained a Honolulu Psychiatrist, Stephen B. Kemble, for his "opinion concerning possible psychiatric factors affecting Mrs. Gast's death on October 14, 2002." March 20, 2005 Letter to Dennis E.W. O'Connor, Jr. from Stephen B. Kemble ("Kemble Report" attached hereto as Exhibit 3).

6

unsupported by any evidence, and which are inadmissible under Rule 408) is tied by the doctor to any of Mrs. Gast's current medications or long past issues with alcohol or drugs. Dr. Kemble mentions at page three of his report that "she apparently also received a single prescription for Actiq lozenges 400 mcg, which is a fairly potent short acting opiate pain killer, on 10/3/02, about 10 days before leaving for her trip to Hawaii." The parties, in a deposition of her physician confirmed that he never provided her with such a prescription despite her inquiry. (Exhibit 4 : Salaz deposition 9:18 – 10:12).

Dr. Druger[2], an expert for the United States, also stated he had reviewed Mrs. Gast's medical records. He too notes that the toxicology screening was negative for significant chemicals. Exhibit 5: Druger Report at page 2. While he notes that Mrs. Gast was taking multiple psychotropic medications for her psychiatric disorder, he opines that "there is no medical explanation for Mrs. Gast leaving the tour group." He states that he does not think "that a medical condition such as asthma, chest pain, or an acute psychiatric episode such as anxiety or mania would cause the patient to leave the group rather than to seek immediate help." His opinion was that the most likely explanation for her death is

---

[2] Defendant National Park Service has retained a Honolulu Pulmonary Specialist, Dr. George L. Druger to "testify as to whether the record can establish a cause of death connected with air quality." Dr. Druger's Report is attached hereto as Exhibit 5).

hyperthermia and heat stroke as a result of exogenous heat exposure. Exhibit 5 at Page 3.

Dr. Stone is another expert for the United States [3] he reviewed all the medications she was taking at the time of her death. He also mentions a drug which he is not even sure had been prescribed for her, called Actiq. With regard to the Actiq, Dr. Stone mentions that she had asked for the drug, but also states "we do not know why she asked for the drug, how she knew of it, and whether she ever was able to obtain any. …" He also notes that there is no mention of Actiq in Dr. Salaz' notes and the lab reports. The drug Actiq is apparently a strong opiate. However, given the fact that there is no evidence with regard to Actiq other than that Mrs. Gast inquired about it, it has no bearing on this case.

Dr. Stone notes that Dr. Johson had prescribed Ziprasidone, "but it is not clear whether she was actually taking any of this medication at the time of her death." He also discusses Tegretol, which he said can contribute to severe reactions to exposure to the sun. However, he does not show that any such reaction occurred in the case at hand. He also mentions her tendency to get lost

---

[3] Michael H. Stone, M.D. was retained by the United States to render opinions, and specifically to respond to expert witnesses retained by the Plaintiffs. Dr. Stone is board certified in psychiatry and has co-authored books and articles on the subjects of personality disorder and symptom disorders, April 5, 2005 Letter to R. Michael Burke, U.S.A. from Michael H. Stone, M.D. ("Stone Report" attached hereto as Exhibit 6).

and to suffer ill effects from exposure to sever heat, "the latter possibly aggravated by some of her medications." Exhibit 6: Stone Report at 9.

Gayle Suzuki is yet another medical doctor, who prepared a report on behalf of the United States. She reviewed the medical records from Drs. Johnson and Salaz (Mrs. Gast's treating physicians). She notes that Mrs. Gast was on multiple medications including Tegretol, Trazodone, Klonopin, Paxil, Lipitor, Adacand, and Hyzaar. She opines that the cause of death is undetermined, but the possible causes include (1) dehydration due to the heat; 2) Hyperthemia due to hot weather and lack of fluids; 3) Cardiac arrhythmia, in light of her history of hypertension; and 4) hypoxia due to methane or other gases from the lava. None of these causes is related at all to the medications Mrs. Gast was taking at the time of her death, or to any history of illicit drug use or alcohol abuse. Exhibit 7: Suzuki Report

Selma Yamamoto, Pharm. D., is a clinical Pharmacist retained by the United States to testify regarding the various medications. After listing the medications and dosages that Mrs. Gast was currently taking, she essentially concluded that her medication regime was appropriate and was appropriately monitored, and that Mrs. Gast was a compliant patient. Ms. Yamamoto, like Dr. Stone, refers to a note in the medical record on 10/3/02 that Mrs. Gast would like to have a prescription for Actiq (fentanyl citrate intrbuccal) lozenge. However, again like Dr. Stone, Ms.Yamamoto then also notes that there was no mention of Mrs. Gast taking Actiq

9

in Dr. Johnson's records, Dr. Salaz's record or what she took on vacation. In sum, there is no evidence that Mrs. Gast ever received Actiq. Exhibit 8: Yamamoto Report

Above and beyond this, Mrs. Gast's treating physician, Raymond A. Johnson, M.D. testified in his deposition that the medications did not cause or contribute to her death. "Most of these medications are not medications that have a potential to do that kind of harm …." (Exhibit 2: Johnson Depo. at 64:9-15).

In light of the lack of evidence that any illicit drugs or alcohol or any prescription drugs played a role in her death, the mention, listing or description of these drugs would be both irrelevant and unfairly prejudice the jury. In addition, it could take an unwarranted amount of time to elicit testimony on how the prescription medications worked, interacted, etc. when the medications had no bearing on her death.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the instant motion be granted.

DATED: Honolulu, Hawaii, May 30, 2006.

_____
MARK S. DAVIS
Attorney for Plaintiffs