IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| JOHN GAST, Individually and as Special Administrator of the ESTATE OF JACQUELINE GAST and as Guardian Ad Litem for his minor child, AMANDA RENEE GAST, and BROOKE ASHLEY GAST<br><br>Plaintiffs,<br><br>vs.<br><br>SUNG KI KWAK, dba SHIN JIN HAWAI'I TRAVEL & TOUR, a Hawai'i Sole Proprietorship; CYNTHIA HATHAWAY, and AKAL SECURITY, INC., a New Mexico Corporation,<br><br>Defendants. | CIVIL NO. **04-00079 DAE-BMK**<br>(Wrongful Death)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |
| SUNG KI KWAK, dba SHIN JIN HAWAI'I TRAVEL & TOUR, a Hawai'i Sole Proprietorship; and CYNTHIA HATHAWAY,<br><br>Third-Party Plaintiffs,<br><br>vs.<br><br>NORWEGIAN CRUISE LINES, INC. and NATIONAL PARK SERVICE,<br><br>Third-Party Defendants | |

# MEMORANDUM IN SUPPORT OF MOTION

## I. INTRODUCTION

By this motion, Plaintiffs seek to exclude the Florida medical care records and portions of the testimony of a licensed Florida social worker, Stephen Magruder, regarding his treatment of Jacqueline Gast in Florida during the mid to late nineties. The records and testimony are not relevant to either the claims or the defenses in this case and their introduction into evidence would be unfairly prejudicial.

The loss of consortium claims of Mrs. Gast's husband and daughters are based on the role of Mrs. Gast in *their* lives, and any secret statements Mrs. Gast made to her therapist two to nine years before her death do not bear on that because the family members were unaware of the feelings about them that she disclosed. There is other far more recent evidence on her mental health issues from the psychiatrist who treated her most recently, including information on the resulting behaviors that may have impacted her relationship with her family.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On or around October 14, 2002, John Gast and Jacqueline Gast (hereinafter "the Gasts"), were vacationing passengers on a cruise ship, the Norwegian Star, and were docked at Hilo Harbor. This particular cruise was an award Mr. Gast

received for meeting certain sales targets in his job. Prior to receiving this award, the Gasts had no plans to visit the State of Hawai`i or the Big Island.

At approximately 7:40 a.m., Jacqueline Gast disembarked the ship. Apparently, sometime after leaving the ship, Mrs. Gast joined a tour group on one of Defendant Shin Jin Tours' vans driven by Defendant Cynthia Hathaway for a trip to the Hawai`i Volcanoes National Park lava fields at Hilo. Sometime later that morning, the passengers in Defendant Shin Jin's tour van departed the van on foot at the lava fields.

Defendant Shin Jin's tour van and Defendant driver Cynthia Hathaway returned to the pickup point at the lava fields at the appointed time, approximately 11:00 a.m., and picked up the tour van passengers who had previously been dropped off there. Mrs. Gast was not among the tour van passengers who were picked up and returned by Defendant Shin Jin's tour van to the ship at approximately 12:00 noon on that date.

Upon information and belief, Defendant Shin Jin's tour van driver and employee, Defendant Cynthia Hathaway, approached a National Park Service employee between the period of approximately 11:10 a.m. and 11:30 a.m. to report that she could not locate one of her van passengers, Jackie Gast. Ms. Hathaway described Jackie Gast to the National park Service employee and requested the National Park Service employee to look for Mrs. Gast in the lava flow area but she

failed to report to any ranger or to follow-up with any other responsible employee. When Defendant driver Cynthia Hathaway departed the tourist van pick-up point, Jackie was left at the hazardous lava fields on foot.

On or about October 15, 2002, at approximately 6:30 a.m., Mrs. Gast's body was found on the lava fields, close to the end of Chain of Craters Road where she had departed from Defendant Shin Jin's tour van and had been abandoned by Defendant driver Cynthia Hathaway on the morning before.

### III.   THE EVIDENCE FROM STEPHEN MAGRUDER

Stephen L. Magruder is a social worker duly licensed in the State of Florida. Magruder Dec. at 1 [Declaration of Stephen L. Magruder attached hereto as Exhibit 1]. He was a psychotherapist for the deceased Jackie Gast, a Florida resident, and he provided services to her in Florida during two discrete periods of time that considerably predated the events at issue here. The most intense period of his sessions was from July, 17, 1996 to March 17, 1998 when he saw her twice a week. During this two year period in the mid-nineties, he worked with her intensely. After March 17, he only saw her for one additional period, from February 3, 2000 and July 3, 2000 when he saw her for eight sessions total. Exhibit 1: Magruder Dec. at 1. After these brief follow up sessions ending over two years prior to her death, he never saw her again. Exhibit 1: Magruder Dec. at

2. At the time he stopped treating Mrs. Gast, both of them believed she no longer needed psychotherapy. Later, Ms. Gast was treated by a psychiatrist named Dr. Johnson who was her treating and responsible physician at the time of her death. Dr. Johnson has been deposed.

Mr. Magruder was served with a subpoena duces tecum by the federal defendant on March 29, 2005. He objected strongly to producing the documents in question, pointing out that the records included very private and personal disclosures to him, and that the information should not be disclosed or shared with anybody in a public way. "To do so would be an extraordinary breach of the trust she had in me which was a part of the environment that allowed such candid disclosures." Exhibit 1: Magruder Dec. at 5; Exhibit 2: Magruder Depo, 69:5-15 ("Because this is totally outrageous, that if this is the only case you have to go back in someone's psychiatric records after this many years, it shows your desperation. Now, this woman came to me with the idea that she would have confidentiality. And, in fact, the Supreme Court of the United States and Florida law says the same thing. I think this is outrageous, that a psychotherapy and years later, when she's dead, a bunch of lawyers want to mettle into it and reveal confidence.")

After emphasizing the confidential nature of the disclosures, he also stated that the disclosure of the information might have a terribly harmful and injurious

5

emotional impact to her husband and her daughters at a time in which they continue to grieve over her death. Exhibit 1: Magruder Dec. at 6.

Eventually, the Court ordered the production of Mr. Magruder's records and allowed his deposition to be taken.

## IV. ARGUMENT

### A. THE RECORDS AND TESTIMONY AT ISSUE IS ABSOLUTELY PRIVILEGED, AND SHOULD NOT BE ADMISSIBLE AT TRIAL

Federal privilege law applies in this case, as the jurisdiction of this Court arises under the Federal Torts Claim Act. *See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Sec. 4514 and 4515* (Where the interests of the Unites States are directly affected and the issue or right being adjudicated derives from a federal source, federal courts have long recognized that federal laws rather than state laws govern unless Congress otherwise provides); *Tucker v. United States,* 143 F.Supp.2d 619, 622 (S.D.W.Va.2001)("On its face, it would seem that the obvious result in applying *Rule 501* in the context of the FTCA would be that state law supplies the rule of decision.... However, such a literal application of *Rule 501* is inconsistent with the legislative history of *Rule 501,* which supports a finding that Congress intended federal privilege law to apply in FTCA cases."); *Syposs v. United States,* 179 F.R.D. 406, 410-411 (W.D.N.Y.1998)(state privilege law does not apply where FTCA claim is being

asserted); *Burrows v. Redbud Community Hosp. Dist.,* 187 F.R.D. 606, 608 (N.D.Cal.1998)(concluding that *Rule 501* did not require the application of state privilege law in action brought under the federal Emergency Medial Treatment and Active Labor Act even though federal statute, like the FTCA, incorporated state law); *Menses v. United States Postal Service,* 942 F.Supp. 1320 (D.Nev.1996) (simply because the FTCA requires federal courts to look to the law of the state where the act or omission occurred to determine the government's liability does not mean that state law supplies the rule of decision for that claim for purposes of *Rule 501*); *Young v. United States,* 149 F.R.D. 199, 204 (S.D.Cal.1993) (federal, not state, privilege law applies to discovery and admission of evidence in Federal Tort Claims Act cases).

Federal privilege law unambiguously provides that communications made in the course of therapy of the type at issue here are absolutely privileged. *See Jaffe v. Redmond,* 518 U.S. 1, 9 (1996)(where the Supreme Court recognizes, in accordance with the vast majority of the fifty states, a privilege for communications between a patient and licensed social worker made in the course of therapy). In *Jaffe,* the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure" -- including from compelled production pursuant to pretrial discovery -- under Rule 501. 518 U.S. at 15, 116

S.Ct. at 1930; *see id.* at 6, 116 S.Ct. at 1926. The Court also extended this federal psychotherapist privilege "to confidential communications made to licensed social workers in the course of psychotherapy." *Id.* at 15, 116 S.Ct. at 1931. Thus, any "conversations between" Mrs. Gast and a licensed psychotherapist or social worker such as Mr. Magruder "and the notes taken during their counseling sessions are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 6, 18, 116 S.Ct. at 1926, 1932.

This federal privilege recognized in *Jaffe* is not qualified in any way, even if somehow the "interests of justice" would favor waiver of the privilege. In fact, the Supreme Court flatly rejected the suggestion that the privilege was subject to balancing of interests. *Jaffe*, 518 U.S. at 17, 116 S.Ct. at 1932. "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure," the Court said, "would eviscerate the effectiveness of the privilege." *Id.* Accordingly, under *Jaffe* this court may not permit the defendants to see materials covered by this privilege, regardless of its assessment of "the interests of justice".

In sum, under *Jaffe*, the communications at issue are privileged irrespective of any relevance they may have, and cannot be introduced at trial directly or indirectly through the testimony of Mr. Magruder or through his records.

Although this Court allowed discovery of these records and the deposition of Mr. Magruder, it should now revisit the question of how this information is to be used and refuse to allow introduction of any of this evidence at trial because it is absolutely privileged and as discussed below should be excluded under FRE 402.

## V.   IN ANY EVENT, THE EVIDENCE AT ISSUE SHOULD BE EXCLUDED UNDER FRE 402 BECAUSE IT IS NOT RELEVANT

Mr. Magruder's records and testimony contain "no information whatsoever about her psychological state or her psychotherapeutic condition **at the time of her death, nor did I have any information whatsoever about her personal circumstances for two and a half years preceding her death.**"   Exhibit 1: Magruder Dec. at 6.   Even if Mr. Magruder's testimony and records show that Mrs. Gast had indicated suicidal ideation, thoughts of dangerous behavior, or attention getting tendencies to Mr. Magruder in a period at least three years before her death, the facts underlying the instant claim make it highly improbable that any of this is at all relevant to what happened to Mrs. Gast in Hawai`i. This trip to Hawai`i occurred years later, well after her treatment by Mr. Magruder ended. Mrs. Gast died of exposure because a tour bus left her behind on a very dangerous volcano after repeatedly asking others for rides back to the ship.[1]  Even assuming,

---

[1]   Discovery has revealed substantial testimony that the last people who saw Mrs. Gast were taxi drivers who she asked to drive her back to the ship, not exactly the type of conduct one would expect from a person intent upon committing suicide by "exposure."

9

though there is no evidence to support this, that Mrs. Gast deliberately was not at the bus at the time of its scheduled departure for some reason related to her mental illness, the facts still remain that (1) the bus drove off without her and (2) no one went to look for her for almost eighteen hours and (3) abandoned there, she died due to exposure to the volcano. These actions and inactions, which form the bases of the claims here, were subsequent to any act by Mrs. Gast that may hypothetically have been tied to her mental illness as treated by Mr. Magruder many years before.

Further, Mr. Magruder himself testified in his deposition that Mrs. Gast was not a risk taker, and that he never thought she would commit suicide. Exhibit 2: Magruder Depo, 40:24-25, 41:14-15. There is therefore a substantial danger that the jury could misinterpret any of his notes with regard to suicidal ideation, both because the notes were made so long ago and because Mr. Magruder himself did not believe Ms. Gast was either a risk taker or likely to kill herself.

Nor can these records have a bearing on the loss of consortium claims of Mr. Gast and his daughters. As Mr. Magruder testifies, Mrs. Gast did not share the feelings recorded in his records with her family, and they had no knowledge of it during the time Mrs. Gast still lived.

## VI. THE EVIDENCE SHOULD BE EXCLUDED BECAUSE OF UNFAIR PREJUDICE

FRE 403 provides that

> [a]lthough relevant, evidence may be exluced if its probative value is substantially outweighed by the danger of unfair prejudice confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In other words, there is a line to be drawn when the potentially inflammatory nature of the information exceeds it probative value. A trial court's duty is to balance these factors, to ensure that the primary effect of evidence is to advance an issue in the case rather than to appeal to the jury's emotions or "arous[e] its sense of horror, provok[e] its instinct to punish, or trigge[r] other mainsprings of human action [that] may cause a jury to base its decision on something other than the established propositions in the case. 1 J. Weinstein & M. Berger, Weinstein's Evidence Section 403[03], at 403-33-39 (1991).

Application of these principles in the case at hand requires the exclusion of any reference to Mrs. Gast's psychotherapy records maintained by Mr. Magruder, and as well as his testimony. These records contain revelations of Mrs. Gast's most private thoughts, which she never revealed to any one other than her psychotherapist – and which she revealed to him only on the basis that the disclosures were privileged. These thoughts might well inflame and unduly

prejudice the jury – a result that would far outweigh any possible probative value that these records from many years ago might have.

## VII. CONCLUSION

For the foregoing reasons, the Mr. Magruder's records and references to the contents should be completely excluded from this case. If the Court is to allow any reference to information contained within Mr. Magruder's records, counsel should be required to provide advance notice of such reference to allow the parties to bring objections in advance to the Court.

DATED: Honolulu, Hawaii, May 30, 2006.

_____
MARK S. DAVIS

Attorney for Plaintiff