OF COUNSEL:
DAVIS LEVIN LIVINGSTON GRANDE

MARK S. DAVIS    1442-0
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, Hawai'i 96813
Telephone: (808) 524-7500
Fax: (808) 356-0418
Email: mdavis@davislevin.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN GAST, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE **ESTATE OF JACQUELINE GAST** AND AS GUARDIAN AD LITEM FOR HIS MINOR CHILD, **AMANDA RENEE GAST, and BROOKE ASHLEY GAST** <br><br> PLAINTIFFS, <br><br> vs. <br><br> **SUNG KI KWAK,** DBA **SHIN JIN HAWAI'I TRAVEL & TOUR,** A HAWAI'I SOLE PROPRIETORSHIP; AND **CYNTHIA HATHAWAY** <br><br> DEFENDANTS. | CIVIL NO. **04-00079 DAE-BMK** (WRONGFUL DEATH) <br><br><br> **DECLARATION OF STEPHEN L. MAGRUDER** <br><br><br><br><br><br> Trial:   September 7, 2005 |
| **SUNG KI KWAK,** DBA **SHIN JIN HAWAI'I TRAVEL & TOUR,** A HAWAI'I SOLE PROPRIETORSHIP; AND **CYNTHIA HATHAWAY,** <br><br> THIRD-PARTY PLAINTIFFS, | |

**EXHIBIT  1**

vs.

**NORWEGIAN CRUISE LINES, INC.** AND **NATIONAL PARK SERVICE,**

      THIRD-PARTY DEFENDANTS

NCL (BAHAMA) LIMITED,

      COUNTERCLAIM PLAINTIFF,

vs.

NATIONAL PARK SERVICE (USA),

      CROSS-CLAIM DEFENDANT

NATIONAL PARK SERVICE (USA),

      COUNTERCLAIM PLAINTIFF,

vs.

JOHN GAST, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF JACQUELINE GAST AND AS GUARDIAN AD LITEM FOR HIS MINOR CHILD, AMANDA RENEE GAST, AND BROOKE ASHLEY GAST, SUNG KI KWAK, DBA SHIN JIN HAWAI`I TRAVEL & TOUR, A HAWAI`I SOLE PROPRIETORSHIP; AND CYNTHIA HATHAWAY,

      COUNTERCLAIM DEFENDANTS.

NATIONAL PARK SERVICE (USA),

      CROSS-CLAIM PLAINTIFF,

vs.

NCL (BAHAMA) LIMITED,

      CROSS-CLAIM DEFENDANT.

## DECLARATION OF STEPHEN L. MAGRUDER

1. My name is Stephen L. Magruder and I am a licensed social worker practicing in Florida. During the period of time between 1996 and 1998, I was a psychotherapist for Jackie Gast. I began seeing her on July 17, 1996 and saw her twice a week until approximately March 17, 1998. This was the period of time in which I had my most active involvement with her. I only saw her once again for a short period of eight sessions that lasted between February 3, 2000 and July 3, 2000. However, the bulk of my treatment and involvement in her case was between 1996 and 1998.

2. I never saw Jackie Gast again after July 3, 2000 until the date of her death on October 14, 2002.. I have no information whatsoever about her psychological state or her psychotherapeutic condition at the time of her death, nor did I have any information whatsoever about her personal circumstances for two and a half years preceding her death.

3. During that time, Ms. Gast was treated by a psychiatrist by the name of Dr. Raymond Johnson. It is my understanding that Dr. Johnson, who has been deposed, was her primary treating physician and prescribed her relevant medication. Dr. Johnson will be able to provide updated information about her personal circumstances and her psychiatric state at the time of her death and in the years preceding her death.

4. I have reviewed the request of the lawyers to examine my notes of sessions that I had with her during the 1990s. I have been informed that I will receive another subpoena for my records to which I object. During our sessions, she communicated with me about numerous issues in her life. It was my understanding that at no time did her family know about many of her psychological issues reported to me and I am certain that

her comments to me were not shared with her husband or daughters, who she loved very much. Obviously, during our sessions, she talked about her family, marriage and children in a very personal way and in a way that, under no circumstances, did she ever intend to be revealed.

5. It was also my understanding that her own feelings about her family, marriage and children were not communicated to her family and their own impressions of the relationship were not in any way involved by the very private and personal disclosures to me. I believe that this information should not be disclosed or shared with anybody in a public way. To do so would be an extraordinary breach of the trust she had in me which was a part of the environment that allowed such candid disclosures. I view this as a matter of violation of the confidence that she had in me and under no circumstances would she want her husband or children to be privy to the information she shared with me up to nine years ago.

6. I also think the disclosure of this information might have a terribly harmful and injurious emotional impact to her husband and her daughters at a time in which they continue to grieve over her death that occurred in Hawaii. Again, I have absolutely no information about the status of her marriage, children or family relationships at all for any time within the last two and a half years preceding her death.

7. I have no information at all about her emotional state at the time she died. While I treated her, she would have periods in which she would go up and down and her psychiatrist is only person to fill in this information at or around the time that she died..

8. Therefore, I strongly object to the production of any of these psychotherapeutic notes and to the subpoena that will or has been issued. The harm

which will be occasioned by their public disclosure, including to her family, would outweigh anything that would be relevant to her psychological situation at the time of her death.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: Ft. Myers, Florida   March 28, 2005.

_____
STEPHEN L. MAGRUDER, L.C.S.W.