IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN GAST, individually, and as Special Administrator of the Estate of JACQUELINE GAST, and as Guardian Ad Litem for his minor child, AMANDA RENEE GAST, and BROOKE ASHLEY GAST, | ) ) ) ) ) ) ) |

CV NO 04-00079 DAE-BMK

Plaintiffs,

vs.

SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship, CYNTHIA HATHAWAY, and AKAL SECURITY, INC., a New Mexico Corporation,

Defendants.

_____

SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship; CYNTHIA HATHAWAY,

Third-Party Plaintiffs,

vs.

NORWEGIAN CRUISE LINES, INC. and NATIONAL PARK SERVICE,

Third-Party Defendants.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 3 0 2005

at 8 o'clock and 50 min. A M
SUE BEITIA, CLERK

**EXHIBIT "A"**

DEC 1 2005

NCL (BAHAMA) LIMITED,          )
                              )
          Cross-claim Plaintiff,  )
                              )
     vs.                      )
                              )
NATIONAL PARK SERVICE         )
(USA),                        )
                              )
          Cross-claim Defendant.  )
                              )
NATIONAL PARK SERVICE         )
(USA),                        )
                              )
          Counterclaim Plaintiff,  )
                              )
     vs.                      )
                              )
JOHN GAST, individually, and as  )
Special Administrator of the Estate of )
JACQUELINE GAST, and as       )
Guardian Ad Litem for his minor  )
child, AMANDA RENEE GAST,     )
and BROOKE ASHLEY GAST,       )
SUNG KI KWAK, dba SHIN JIN    )
HAWAII TRAVEL & TOUR, a       )
Hawaii Sole Proprietorship; and  )
CYNTHIA HATHAWAY,             )
                              )
          Counterclaim Defendants.  )
                              )
NATIONAL PARK SERVICE         )
(USA),                        )
                              )
          Cross-Claim Plaintiff,  )

|                                |     |
|--------------------------------|-----|
| vs.                            | )   |
|                                | )   |
|                                | )   |
| NCL (BAHAMA) LIMITED,          | )   |
|                                | )   |
|        Cross-Claim Defendant.  | )   |
|                                | )   |

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS AND THIRD-PARTY PLAINTIFFS SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR AND CYNTHIA HATHAWAY'S MOTION FOR SUMMARY JUDGMENT

On November 28, 2005, the Court heard Defendants and Third-Party Plaintiffs Sung Ki Kwak, dba Shin Jin Hawaii Travel & Tour and Cynthia Hathaway's Motion for Summary Judgment and the joinders thereto. Dennis E.W. O'Connor, Sr., Esq., and Dennis E. O'Connor, Jr., Esq., appeared at the hearing on behalf of Defendants and Third-Party Plaintiffs; R. Michael Burke, Assistant United States Attorney, appeared at the hearing on behalf of Defendant National Park Service; Jeffrey S. Portnoy, Esq., and Neill Tseng, Esq., appeared at the hearing on behalf of Third-Party Defendants NCL (Bahama) Limited; April Luria, Esq., appeared at the hearing on behalf of Akal Security, Inc.; Mark Davis, Esq., appeared at the hearing on behalf of Plaintiffs. After reviewing the motion, the joinders, and the supporting and opposing memoranda, the Court DENIES IN PART AND GRANTS IN PART the Kwak Defendants' Motion for Summary

3

Judgment and joinders thereto.  The Court DENIES the request to dismiss Plaintiffs' negligence claim.  The Court DENIES the request to dismiss Plaintiff Mr. John Gast's negligent infliction of emotional distress claim.  The Court GRANTS the request to dismiss Plaintiffs Amanda Renee Gast and Brooke Ashley Gast's negligent infliction of emotional distress claims.

<u>BACKGROUND</u>

This is a case involving Plaintiffs John Gast, the estate of Jacqueline Gast, and the children of the same, Amanda and Brooke Gast (collectively "Plaintiffs"), Defendants Sung Ki Kwak, dba Shin Jin Hawaii Travel & Tour and Cynthia Hathaway (collectively "Kwak Defendants"), Akal Security, Inc., and Third-Party Defendants NCL (Bahama) Limited ("NCL")[1] and National Park Service.

On October 14, 2002, 45-year-old Jacqueline Gast ("Mrs. Gast"), a passenger on the Norwegian Star cruise ship, took a tour to Hawaii Volcanoes National Park that was conducted by Cynthia Hathaway ("Hathaway") on behalf of Shin Jin Hawaii Travel & Tour.  Mrs. Gast's husband, who was on the cruise with

---

[1] NCL (Bahama) Limited was incorrectly identified as  Norwegian Cruise Lines, Inc.

Mrs. Gast, took a prearranged helicopter tour that day. He was unaware that Mrs. Gast went on the tour with Hathaway's group.

After entering the park, Hathaway stopped at Volcanoes Observatory, then proceeded to the end of Chain of Craters Road, where she dropped of the group and parked the van. Certain areas of the park were closed on this day. Kwak Defendants allege that Hathaway provided her groups with precautionary instructions regarding wearing good shoes and the air quality at the park. (Kwak Defs.' Concise Statement of Facts ("CSF") Re: Memo. in Opp'n to Pls.' Mot. for Partial Summ. J., Ex. A at 34-35). Plaintiffs claim that Hathaway did not provide any precautionary information to the group regarding the type of clothing or shoes that they should wear or the conditions they would encounter at the park. (Pls.' CSF in support of Pls.' Opp'n to Kwak Defs.' Mot. for Summ. J., Ex. A at 11.) Mrs. Gast was wearing backless sandals and she had no hat or water with her. It was a particularly hot and "voggy" day, with no wind. It is claimed that in the past Mrs. Gast had become disoriented when she overheated and had suffered panic attacks.

The members of Hathaway's group had the option of waiting at a pavilion (kiosk), exploring on their own, or accompanying Hathaway on the mauka trails. Mrs. Gast, Hathaway, and others on the tour walked on the mauka trail. The

5

areas with hot lava were just a few feet away from the marked trails.  Mrs. Gast walked slower than the others and lagged behind.  Approximately 30 feet into the trail, Mrs. Gast decided that she did not want to proceed further.  At that point, Hathaway told Mrs. Gast to return to the pavilion, which was allegedly visible from their position on the trail, and to wait for her there.  Mrs. Gast headed toward the pavilion and Hathaway never saw her again.  Hathaway returned to the pavilion at 11:00 a.m., the previously agreed upon rendezvous time.

At approximately 10:30 a.m., Larry Ammasi ("Ammasi"), another tour driver, spoke with Mrs. Gast at the pavilion.  Mrs. Gast requested a ride back to the ship, but he refused for liability reasons.  Ammasi testified that Mrs. Gast did not appear to be confused, disoriented, or scared.  Ammasi explained to Mrs. Gast that her tour group should be returning within 10 to 15 minutes.  That is the last time anyone saw Mrs. Gast alive.

When Hathaway's tour group returned to the pavilion, Mrs. Gast was not present.  Group members, along with Hathaway, went back to the trails to search for her.  They stopped searching for her after approximately 20 to 30 minutes.  Hathaway alerted a park employee that one of her passengers had not returned.

The tour group returned to the ship at approximately 12:30 p.m. Hathaway told a person at the pier that one of the passengers had not returned with her to the ship. Hathaway could not give the name of the passenger since she did not know or record the tour group passengers' names. Akal alleges that it informed Hathaway that since she did not know the name of the missing person that she needed to go back to the park to look for the missing passenger. Hathaway did nothing further to search for Mrs. Gast or report her missing.

Sometime between 6:00 and 6:30 a.m. the next day, October 15, 2002, a hiker discovered Mrs. Gast's body around one-half mile north of the coastal shelter from Chain of Craters Road, approximately one-quarter mile off the road, and approximately 20 yards from the edge of the western flow in a closed area of the park. She was lying on a recent cooling lava flow in an area where molten lava was present two feet beneath the surface. Mrs. Gast was barefoot and one of her sandals was approximately four meters from her body. She also had a cigarette in her hand. Mrs. Gast's time of death is unknown.

The Kwak Defendants filed this motion for summary judgment on September 16, 2005. Akal Security, NCL, and National Park Service filed joinders on September 22, 2005, September 26, 2005, and November 10, 2005,

7

respectively. Plaintiffs filed an opposition on November 10, 2005, and the Kwak Defendants filed a reply on November 17, 2005.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Depot of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of

8

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge

9

must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

I.    Proximate Cause

The Kwak Defendants argue that Plaintiffs cannot prove that they were the proximate cause of Mrs. Gast's death since the undisputed evidence establishes that the tour group was to rendezvous at the pavilion area at 11:00 a.m., Mrs. Gast was seen at the pavilion approximately 15 to 30 minutes before 11:00 a.m., and Mrs. Gast left the pavilion area. The Kwak Defendants claim that had she remained at the pavilion area she would have been found.

Plaintiffs argue that the Kwak Defendants cannot establish as a matter of law that their actions were not a substantial factor in causing Mrs. Gast's death. Plaintiffs assert that the Kwak Defendants were negligent by failing to warn Mrs.

10

Gast about the harsh conditions at the Volcano and wearing appropriate footwear, and failing to attempt to conduct a sincere and proper search and rescue and/or contact appropriate persons to conduct a search and rescue for Mrs. Gast. Plaintiffs claim that such actions led to Mrs. Gast's death because she was deprived of a reasonable chance for survival.

Under Hawaii law, the elements of a cause of action for negligence are:

> 1. A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; 2. A failure on the [defendant's] part to conform to the standard required: a breach of the duty; 3. A reasonably close causal connection between the conduct and the resulting injury and 4. Actual loss or damage resulting to the interests of another.

Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 383, 742 P.2d 377, 385 (Haw. 1987) (citation omitted). The defendant's negligent conduct is the proximate cause of the plaintiff's injury if the conduct was more likely than not a substantial factor in bringing about the harm, and there are no rules of law or policy concerns that would prevent the imposition of liability on the defendant. Taylor-Rice v. State, 91 Haw. 69, 74, 979 P.2d 1086, 1100 (Haw. 1999).

The issue of whether a defendant's actions were more likely than not a substantial factor in causing the plaintiff's injury is normally a question for the jury. <u>Knodle</u>, 69 Haw. at 383, 742 P.2d at 385; <u>see also</u> <u>Taylor-Rice</u>, 91 Haw. at 69, 979 P.2d at 1095 ("[i]t is the exceptional case when [proximate cause or contributory negligence] can be determined and enforced as a matter of law.") (citing <u>Mitchell v. Branch</u>, 45 Haw. 128, 363 P.2d 969 (1961)). "Only "where there is no conflict from the evidence and but one inference can be drawn from the facts, ... is [it] the duty of the court to pass upon the questions of negligence and proximate cause as questions of law." <u>Taylor-Rice</u>, 91 Haw. at 69, 979 P.2d at 1095 (citation omitted).

Here, it is undisputed that the day in question was particularly hot and voggy, with no wind. Plaintiffs allege that the Kwak Defendants did not warn the tour group members about the heat and difficult conditions at the park or inform them of appropriate dress. A passenger on Hathaway's tour testified that the soles of his and his wife's sandals melted from walking in the park. It is undisputed that the Kwak Defendants allowed members of the tour group to go off on their own, unsupervised. In addition, a professor of medicine and the Chief Ranger of National Park Service have opined that Mrs. Gast's death was preceded by a period of disorientation. Based upon these facts, Plaintiffs allege that had the Kwak

12

Defendants warned Mrs. Gast about the hot and difficult conditions she would encounter at the park, and/or told her that her backless sandals were inappropriate, Mrs. Gast may have declined to go on the tour due to the adverse reactions she experienced in past from overheating, stayed farther away from the flowing lava, and/or brought along water and a hat to help better protect herself from overheating and becoming disoriented.

It is also undisputed that Hathaway did not ask any park employees for assistance with a search and/or to conduct a search for Mrs. Gast until 30 minutes after Hathaway realized that she was missing. Although upon leaving the area Hathaway told a park employee that she could not find one of her passengers, there is a dispute as to whether Hathaway believed the employee was a park ranger or a maintenance worker and whether she told him the passenger was missing or if she only told him that if the passenger showed up to find her own way back to the ship. Plaintiffs allege that if Hathaway had reported a missing passenger to the appropriate park official between 11:00 and 11:30, a search for Mrs. Gast could have been initiated immediately.

It is undisputed that the Kwak Defendants did not take down the names of the passengers on their tour. It is further undisputed that when the tour group returned to the pier and Hathaway told someone at the pier that one of her

passengers was missing, she was informed that since she did not know the name of the missing person that she needed to go back to the park to look for the missing passenger. It is undisputed that Hathaway did nothing further to search for Mrs. Gast or report her missing. In addition, it is undisputed that the park employee to whom she had told that one of her passengers was not returning with her forgot about Mrs. Gast and did not search for her. Finally, it is undisputed that Mrs. Gast had been walking slowly, was found one-half mile from the pavilion, and that except for burns to her toes, the other burns on her body appear to have been caused by long exposure to warm cooling lava. Plaintiffs argue that a jury could find from these facts that Mrs. Gast had a reasonable chance of survival at the time that Hathaway returned to the pier and that the Kwak Defendants' negligence in not properly reporting her missing or ensuring that a search was conducted deprived Mrs. Gast of that chance of survival.

Although the Kwak Defendants are correct that Plaintiffs bear the ultimate burden at trial to prove that it is more likely than not that the Kwak Defendants' acts or omissions were a proximate cause of Mrs. Gast's death, and that Plaintiffs may have difficulty meeting that burden, that is not the burden that Plaintiffs have to meet in opposing a summary judgment motion. Instead, Plaintiffs only have to produce evidence establishing that there is a genuine issue

14

of material fact.  Taking the above evidence in the light most favorable to

Plaintiffs, it is sufficient to create a genuine issue of material fact as to whether the

acts or omissions of the Kwak Defendants were a substantial factor in causing Mrs.

Gast's death.  See Herskovits v. Group Health Co-op. of Puget Sound, 99 Wash. 2d

609, 613-14, 664 P.2d 474, 476 (Wash. 1983) (noting that some courts, including

the Ninth Circuit, have allowed the proximate cause issue to go to the jury where

the "defendants' conduct deprived the decedents of a "significant" chance to

survive or recover, rather than requiring proof that with absolute certainty the

defendants' conduct caused the physical injury."); see also Gardner v. Nat'l Bulk

Carriers, Inc., 310 F.2d 284, 287(4th Cir. 1962) (proximate cause is proved if the

evidence establishes that there was a reasonable possibility of rescue and the

defendants refused to make a sincere attempt at a rescue); Hicks v. United States,

368 F.2d 626, 632 (4th Cir. 1966) ("[w]hen a defendant's negligent action or

inaction has effectively terminated a person's chance of survival, it does not lie in

the defendant's mouth to raise conjectures as to the measure of the chances that he

has put beyond the possibility of realization. If there was any substantial possibility

of survival and the defendant has destroyed it, he is answerable.").

    Relying on Exxon v. Sofec, 517 U.S. 830 (1996), the Kwak

Defendants also argue that Mrs. Gast could have avoided injury by not leaving the

pavilion. In Exxon, a tanker was delivering oil through two hoses when a heavy storm broke and the chain linking the vessel to the mooring system broke. Id. at 832-33. The vessel drifted and one of the hoses that was still attached to it trailed behind it threatening the propeller. Eventually, an assist vessel got the hose under control and the Exxon vessel headed out to sea away from shallow water and reached a safe position. Id. at 833. For a period of an hour and a half while the hose was being disconnected from the vessel, the captain of the Exxon vessel failed to have someone plot the ship's position and thus the captain was unable to use a navigational chart to check for hazards. The ship then ran aground on a reef. The court found that the captain's failure to plot fixes of the ship's position was "grossly and extraordinarily negligent." Id. at 834. The court noted that the captain's decisions were made calmly, deliberately and without the pressure of imminent peril. Id. The court also noted the captain's decision was entirely independent of the hose breakout. The court thus found that the captain's extraordinary negligence was the sole proximate cause of the Exxon's injuries and thus the defendants were not liable. Id. at 830-31, 840.

The instant case is factually different from the Exxon case. There is nothing in this case to suggest as a matter of law that Mrs. Gast was grossly negligent in leaving the pavilion or that her actions were unforeseeable. Hathaway

16

had told the tour group members that they could explore on their own. According to Ammasi, Mrs. Gast believed that her group would not return for another 15 to 30 minutes. There is no evidence that area surrounding the pavilion, or that whatever path she took to get to the edge of the western flow, was closed or was not sufficiently cooled lava acceptable to walk on. Indeed, a hiker was close enough to the edge of the western flow to find Mrs. Gast's body. In addition, the mauka trials, which the tour group and Mrs. Gast had been on earlier in the day, were just several feet away from the hot lava. Thus, these facts do not suggest that Mrs. Gast was extraordinarily negligent in leaving the pavilion and presumably taking a walk to see the hot lava.

Instead, even if a jury could find that Mrs. Gast failed to exercise due care, it does not completely absolve the Kwak Defendants of liability since the evidence cannot establish that she was so grossly negligent that she was the sole cause of her own death.[2] See Talyor-Rice, 91 Haw. at 75, 979 P.2d at 1101 (affirming the trial court's finding that although the driver was at fault for causing the accident by not paying close attention, the State's failure to improve a guardrail was a substantial factor in bringing about the plaintiff's injuries); Simpson v. State,

---

[2] Concurrent with this Order, this Court has issued an Order denying Plaintiffs' Motion for Summary Judgment on the affirmative defense of contributory negligence.

636 So.2d 608, 612 (La. Ct. App.1993) (court rejected argument that the defective condition of a bridge was not the cause of the driver losing control of his vehicle because both the actions of the driver and the inaction of the State combined to cause the event) <u>cited</u> in <u>Taylor-Rice</u>, 91 Haw. at 75, 979 P.2d at 1101.

Since there is more than one inference which can be drawn from the facts, summary judgment is inappropriate on Plaintiffs' negligence action.

II.   <u>Negligent Infliction of Emotional Distress</u>

Relying on <u>Kelley v. Kokua Sales, Inc.</u>, 56 Haw. 204, 532 P.2d 673 (1975), the Kwak Defendants argue that Plaintiffs' Negligent Infliction of Emotional Distress ("NIED") claim should be dismissed because Mrs. Gast's daughters were in Florida during the entire time of this incident and Mr. Gast was on a cruise ship on the high seas when he was informed of Mrs. Gast's death.

The Supreme Court of Hawaii has held that it is not "necessary that the plaintiff actually witness the tortious event in order to recover for emotional distress." <u>Masaki v. Gen. Motors Corp.</u>, 71 Haw. 1, 17, 780 P.2d 566, 575 (Haw. 1989) (citing <u>Rodrigues v. State</u>, 52 Haw. 156, 173-74, 472 P.2d 509, 520 (Haw. 1970) and <u>Campbell v. Animal Quarantine Station</u>, 63 Haw. 557, 632 P.2d 1066 Haw. 1981)).  However, where the plaintiff's location from the scene of the accident is too remote such that the defendant could not have foreseen the

18

consequences of his or her conduct, recovery is barred. Kelley, 56 Haw. at 209,

532 P.2d at 676. Recovery is restricted to those who are within a reasonable

distance from the scene of the tortious event. Campbell, 63 Haw. at 561, 632 P.2d

at 1068.

For example, in Kelley, the plaintiff was the estate of Mr. Kelley, who

was a father and grandfather of persons killed in an automobile accident in

Honolulu, Hawaii. At the time of the accident, Mr. Kelley lived in California.

Soon after learning the news, Mr. Kelley died of a heart attack. The court found

that because Mr. Kelley's location from the scene of the accident was too remote

for defendants to have reasonably foreseen the consequences of their conduct, the

defendants owed no duty to him and thus, the plaintiff could not recover for NIED.

Id. at 209, 532 P.2d at 676. The court noted that

> [i]t would be an entirely unreasonable burden on all
> human activity if the defendant who has endangered one
> man were to be compelled to pay for the lacerated
> feelings of every other person disturbed by reason of it,
> including every bystander shocked at an accident, and
> every distant relative of the person injured, as well as his
> friends.

Id. (quoting W. Presser, Law of Torts s 54 at 334 (4th ed. 1971)).

In Masaki, the court allowed the parents of a 28-year-old man who

was injured in an accident, to recover for their NIED claim even though they were

not present at the scene of their son's accident. 71 Haw. at 18, 780 P.2d at 576. The court allowed recovery since the parents resided on the same island and witnessed the consequences of the accident when they went to the hospital and learned that he would never walk again. Id.; see also Campbell, 63 Haw. at 561-62, 632 P.2d at 1068 (court allowed plaintiffs to recover for NIED for the death of their dog even though they did not witness the event since both plaintiffs and the dog were located in Honolulu). The court found that "[the fact that the Masakis] did not witness the accident is not a bar to recovery, but rather is a factor in determining the degree of mental stress suffered." Masaki, 71 Haw. at 18, 780 P.2d at 576.

Here, it is undisputed that Plaintiffs Brooke and Amanda Gast were not on the cruise with their parents but remained in Florida, where they resided. It is further undisputed that Brooke and Amanda were in Florida when they learned of their mother's death. In addition, unlike the plaintiffs in the Masaki case, Brooke and Amanda did not witness any direct consequences of the tortious conduct, such as conducting a search for Mrs. Gast or being directly informed by the authorities. Accordingly, this Court finds that as in the Kelley case, Brooke and Amanda's location was too remote from the scene of the tortious event. Therefore, their NIED claim is barred. The Kwak Defendants' motion for

summary judgment, and the joinders thereto, with respect to Plaintiffs Amanda and Brooke Gast's NIED claim is GRANTED.

Mr. Gast, on the other hand, was on the cruise in Hawaii with his wife, Mrs. Gast. Hathaway knew that Mrs. Gast was traveling with her husband. Prior to the ship leaving the port in Hawaii, Mr. Gast searched for his wife on the ship and informed the front desk that he did not believe his wife was on board. At that time, he was informed that the computers showed that she had gone off the ship and had not returned. Mr. Gast was told to remain on the ship. The ship later began sailing to its next port, outside of Hawaii. Mr. Gast was up all night. The next day, the captain of the ship informed Mr. Gast that a body had been found and he had to view a photograph of jewelry to identify whether it belonged to his wife. These facts with respect to Mr. Gast are more analogous to the facts of the Masaki and Campbell cases, then they are to the Kelley case. Accordingly, Hathaway certainly could foresee that Mr. Gast would suffer emotional distress upon learning of his wife's disappearance. For these reasons, Mr. Gast may go forward with his NIED claim and the Kwak Defendants' motion for summary judgment on Mr. Gast's NIED claim is DENIED.

CONCLUSION

For the reasons stated above, the Court DENIES IN PART AND GRANTS IN PART the Kwak Defendants' Motion for Summary Judgment and joinders thereto. The Court DENIES the request to dismiss Plaintiffs' negligence claim. The Court DENIES the request to dismiss Plaintiff Mr. John Gast's negligent infliction of emotional distress claim. The Court GRANTS the request to dismiss Plaintiffs Amanda Renee Gast and Brooke Ashley Gast's negligent infliction of emotional distress claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, _____.

NOV 3 0 2005

_____
DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE


John Gast, et al. v. Sung Ki Kwak, et al., CV No. 04-00079 DAE BMK; ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS AND THIRD-PARTY PLAINTIFFS SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR AND CYNTHIA HATHAWAY'S MOTION FOR SUMMARY JUDGMENT