CADES SCHUTTE
A Limited Liability Law Partnership

JEFFREY S. PORTNOY          1211-0
NEILL T. TSENG              8088-0
1000 Bishop Street, Suite 1200
Honolulu, Hawaii 96813-4212
Telephone:  (808) 521-9200
Fax:        (808) 540-5040
Email:      jportnoy@cades.com

Attorneys for Third-Party Defendant NCL
(BAHAMA) LTD incorrectly named herein as
NORWEGIAN CRUISE LINES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN GAST, individually, and as Special Administrator of the Estate of JACQUELINE GAST, and as Guardian Ad Litem for his minor child, AMANDA RENEE GAST, and BROOKE ASHLEY GAST,<br><br>        Plaintiffs,<br><br>    v.<br><br>SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship; CYNTHIA HATHAWAY, and AKAL SECURITY, INC., a New Mexico Corporation,<br><br>        Defendants. | CIVIL NO. 04-00079 DAE-BMK (Wrongful Death)<br><br>THIRD-PARTY DEFENDANT NCL (BAHAMA) LTD'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE ANY EVIDENCE THAT QUAY CRUISE AGENCY USA, BY AND THROUGH ITS EMPLOYEES, ACTED OUTSIDE THE SCOPE OF ITS AGENCY WITH NCL (BAHAMA) LTD; DECLARATION OF NEILL T. TSENG; EXHIBITS "A" – "B"; CERTIFICATE OF SERVICE<br><br>Hearing:<br>Date:   June 22, 2006<br>Time:   9:00 a.m.<br>Judge:  Honorable David Alan Ezra |

| | |
|---|---|
| SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship, and CYNTHIA HATHAWAY,<br><br>      Third-Party Plaintiffs,<br><br>      v.<br><br>NORWEGIAN CRUISE LINES, INC. and NATIONAL PARK SERVICE,<br><br>      Third-Party Defendants. | Trial:  August 15, 2006<br>Judge:  Honorable David Alan Ezra |

**THIRD-PARTY DEFENDANT NCL (BAHAMA) LTD'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE ANY EVIDENCE THAT QUAY CRUISE AGENCY USA, BY AND THROUGH ITS EMPLOYEES, ACTED OUTSIDE THE SCOPE OF ITS AGENCY WITH NCL (BAHAMA) LTD**

**I.   INTRODUCTION**

      Plaintiffs' Motion in Limine No. 1 To Exclude Any Evidence That Quay Cruise Agency USA, By and Through Its Employees, Acted Outside the Scope of Its Agency With NCL (Bahama) Ltd (the "Motion") is nothing more than a belated and befuddled attempt by Plaintiffs to make up for an inexplicable error they made in failing to name Quay Cruise Agency USA ("Quay") as a defendant in this action. Now, Plaintiffs hope to excuse that error by holding NCL (Bahama) Ltd. ("NCL") vicariously liable for Quay's acts or omissions. However, Plaintiffs' Motion should be denied because (1) Plaintiffs have failed to demonstrate that

2

Quay was NCL's agent rather than an independent contractor; (2) at a minimum, the existence of an agency relationship is a factual question for the jury; and (3) even if there was a master-agent relationship, there is no ground for excluding evidence that Quay acted outside the scope of that relationship.

## II.     FACTUAL BACKGROUND

Mr. and Mrs. John and Jacqueline Gast were passengers on the Norwegian Star. On October 14, 2002, the ship was docked at Hilo Harbor. Mr. Gast disembarked from the ship at approximately 7:20 a.m. to take a helicopter tour of the Big Island. Mrs. Gast disembarked from the ship at approximately 7:44 a.m. She did not inform Mr. Gast or any NCL representative where she was going.

Shortly after leaving the ship, Mrs. Gast joined a tour of the volcano led by Cynthia Hathaway, an employee of Shin Jin Hawaii Travel and Tour ("Shin Jin"). Ms. Hathaway drove Mrs. Gast and the rest of the tour group in a van to the end of Chain of Craters Road at the volcano. At the end of Chain of Craters Road, there is a pavilion with picnic tables and two bathrooms that is attached to a ranger office. The tour group arrived at the pavilion at around 9:30 – 9:45 a.m., and Mrs. Gast began hiking with the rest of the tour group along a trail to view the lava flow. Only a short way into the hike, Mrs. Gast decided not to continue and turned around.

ImanageDB:654561.2

Mrs. Gast returned to the safety of the pavilion, where she was last seen alive at around 10:45 a.m. She was conversing with an elderly couple and asked Larry Ammasi, a driver for a different tour company, if he would take her back to the ship. Mrs. Gast appeared anxious and said that her husband would be wondering where she was. Mr. Ammasi said that he could not take her back, but explained that her own tour group would return in around 15 minutes and told her to wait for them. Mr. Ammasi then departed.

When Ms. Hathaway and the rest of the tour group reconvened at the pavilion at the designated meeting time of 11:00 a.m., Mrs. Gast was nowhere to be seen. Ms. Hathaway briefly searched for Mrs. Gast without success, and informed National Park Service maintenance employee Taures Garcia that she could not locate one of her passengers. At approximately 11:30 a.m., Ms. Hathaway left the volcano and Mrs. Gast behind, returning to the ship with the rest of the tour group. Upon arriving at the ship at around noon, Ms. Hathaway informed an employee of Akal Security, Inc., Jamie Kailiawa, that she had left a female passenger at the volcano, but Ms. Hathaway did not know the passenger's name.

Mr. Gast had returned to the ship at around 9:45 a.m. but could not locate Mrs. Gast on board. Shortly before the ship left port, Mr. Gast informed NCL that he could not find Mrs. Gast, whereupon NCL paged the ship for her but to no avail.

4

The Norwegian Star left port as scheduled at around 1:15 p.m. Meanwhile, NCL continued to page Mrs. Gast and launched a shipwide search for her at approximately 2:00 p.m. NCL asked Mr. Gast for a photograph of Mrs. Gast and distributed this photograph to its security officers conducting the search. Shortly before 2:00 p.m., NCL informed shoreside representative Quay Cruises that NCL might have a missing passenger. That afternoon, Quay Cruises notified the police and state representatives that Mrs. Gast was missing and an all-points bulletin was prepared around 6:00 p.m.

Mrs. Gast was found dead at the volcano early the next morning, lying face up on cooling molten lava approximately ½ mile from the road, the pavilion, or any marked trail.

## III. ARGUMENT

### A. Plaintiffs' Motion Should Be Denied Because Plaintiffs Have Failed to Demonstrate That NCL and Quay Were In a Master-Servant Relationship.

By the instant Motion, Plaintiffs seek to exclude all evidence that Quay acted outside the scope of an alleged agency relationship with NCL. The Motion should be denied because Plaintiffs have failed to establish that any such relationship existed in the first place. In fact, Quay was merely an independent contractor.

ImanageDB:654561.2

Despite the fact that Quay was at times referred to as a "port agent," that was nothing more than industry nomenclature and is not probative as to whether Quay and NCL had an agency relationship as a matter of law. Instead, courts apply a two-part test to determine whether an agency relationship existed:

> The Restatement of Agency defines an agency relationship as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Two characteristics must be present to establish agency: first, <u>the principal must exercise significant control over the agent's activities</u>, and, second, the agent must be engaged in conducting the business of the principal."

<u>Courtney v. Pacific Adventures, Inc.</u>, 5 F. Supp. 2d 874, 880-81 (D. Haw. 1998), <u>reconsideration denied</u>, 27 F. Supp. 2d 1223 (D. Haw. 1998) (emphasis added).

Thus, Plaintiffs must first show that NCL exercised "significant control" over Quay's activities. <u>Accord</u> <u>State v. Hoshijo</u>, 102 Hawai`i 307, 319, 76 P.3d 550, 562 (2003) ("Vicarious liability under the respondeat superior doctrine ordinarily requires some kind of employment relationship or other consensual arrangement under which one person *agrees to act under another's control.*") (quoting Dan B. Dobbs, <u>The Law of Torts</u>, § 335, at 910 (2000)). Plaintiffs have failed to make this showing.

All Plaintiffs assert in the Motion is that Quay employees performed various duties for NCL as a liaison between the ship and services in Hilo. <u>See</u> Motion, Memo at 4-6. But as the Restatement explains, the mere fact that Quay performed

6

services for NCL is not enough – Plaintiffs must additionally show that NCL controlled or had the right to control Quay's physical conduct: "A servant is a person employed to perform services in the affairs of another <u>and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control</u>." Restatement (Second) of Agency § 220(1) (emphasis added).[1]  In other words, Plaintiffs must prove that NCL had the power to dictate the means and methods by which Quay accomplished its work.  <u>See</u> <u>Liftee v. Boyer</u>, 108 Hawai`i 89, 95-96, 117 P.3d 821, 827-28 (Ct. App. 2004).

      This they have failed to do.  Plaintiffs have offered not one iota of evidence demonstrating that NCL controlled Quay's physical conduct or the means and methods of Quay's activities.  On the contrary, the evidence at trial will show that NCL did not supervise Quay, did not instruct Quay how to perform its services, and did not control any of the details of Quay's work.  In fact, NCL was not in any position to control the means and methods of Quay's work because NCL was not acquainted with the local service providers, which was why NCL entered into an agreement with Quay to facilitate local services in the first place.  The evidence at trial will also show that NCL did not provide Quay with any equipment, instruments, tools, or place of work.  Those were all Quay's responsibility.  Thus,

---

[1]  The Hawaii Supreme Court looks to the Restatement for guidance on principles of agency law.  <u>See</u> <u>Hoshijo</u>, 102 Hawai`i at 319-20, 76 P.3d at 561-62.

ImanageDB:654561.2

Quay was nothing more than an independent contractor.  See Liftee, 108 Hawai`i at 96, 117 P.3d at 828 (holding that a physician who performed an IME on behalf of the defendant's insurance company was not an agent of the defendant but was merely an independent contractor because the defendant did not control the details of his activities); see also Courtney, 5 F. Supp. 2d at 881 ("A non-agent independent contractor is 'a person who contracts to accomplish something for another or to deliver something to another, but who is not acting as a fiduciary for the other.'") (quoting Servis v. Hiller Sys., Inc., 54 F.3d 203 (4th Cir. 1995); brackets omitted).

### B.     At a Minimum, Whether Quay Was an Agent or an Independent Contractor Is a Question of Fact for the Jury.

At a minimum, the Motion should be denied because it presents an issue of fact that can be resolved only by the jury at trial.  The agency question is a factual one involving the consideration of many different factors.

> In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
>
> (a)  the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b)  whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d)  the skill required in the particular occupation;

(e)  whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f)  the length of time for which the person is employed;

(g)  the method of payment, whether by the time or by the job;

(h)  whether or not the work is a part of the regular business of the employer;

(i)  whether or not the parties believe they are creating the relation of master and servant; and

(j)  whether the principal is or is not in business.

Restatement (Second) of Agency § 220, at 485-86 (1958).

It is clear under Hawaii law that these factors are to be evaluated by a jury after hearing all the evidence. See Hoshijo, 102 Hawai`i at 319, 76 P.3d at 562 ("Whether an employee or agent is acting within the scope of his or her employment or agency relationship is a question of fact to be determined in the light of the evidence of each particular case.") (brackets and citation omitted); State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc., 90 Hawai`i 315, 327, 978 P.2d 753, 765 (1999) ("It is well settled that, where the facts pertaining to the existence or nonexistence of an agency are conflicting or conflicting inferences may be drawn from the evidence, those are questions of fact for the determination of the jury") (internal quotation marks, brackets, and citation omitted).  As set forth

above, NCL will proffer evidence relating to these factors at trial, which will show that Quay was merely an independent contractor. Thus, the agency question is not appropriate for resolution on this Motion, as that would improperly remove the question from the jury.

      **C.**    **Even Assuming That Quay Was NCL's Agent, There Is No Ground For Granting the Motion.**

Even assuming that Quay was NCL's agent, there is no ground for excluding evidence that Quay acted outside the scope of the agency relationship. Plaintiffs' argument is that "[s]ince [NCL] has not asserted that Quay did anything outside of the scope of its agency, and in fact prevented it [sic] 30(b)(6) witness Mr. Lewis, from testifying in this regard, it should now be barred now from presenting any evidence or arguments to the contrary at trial." Motion, Memo at 8. This argument is a complete non sequitur.

First, it is a nonstarter to argue that NCL has not asserted that Quay acted outside the scope of its agency. There is simply no reason for NCL to have made such an assertion because NCL's position is that Quay was not its agent in the first place. As the moving party and as the party with the ultimate burdens of proof and persuasion at trial, it is Plaintiffs who must establish that Quay (1) was an agent of NCL and (2) acted within the scope of its agency if Plaintiffs hope to hold NCL vicariously liable for Quay's acts or omissions. It is not NCL's burden to disprove those elements before trial.

Second, there is no ground for excluding evidence that Quay acted outside the scope of its agency under the rules of evidence. If and when Plaintiffs attempt to hold NCL vicariously liable for Quay's acts at trial, evidence that Quay acted outside the scope of its agency (as well as evidence that Quay was not NCL's agent in the first place) will obviously be relevant to NCL's defense. See Fed. R. Evid. 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Thus, that evidence is generally admissible unless it would result in unfair prejudice, confusion of the issues, misleading of the jury, undue delay, waste of time, or needless presentation of cumulative evidence. See Fed. R. Evid. 402, 403. Plaintiffs have not identified any such reason for excluding that relevant evidence.

Third, to the extent Plaintiffs argue that such evidence would result in unfair prejudice because Mr. Lewis was instructed at his deposition not to answer (1) whether Quay failed to do anything it was asked or instructed to do, and (2) whether Quay did anything wrong in this particular case, that argument is without merit. As to (1), Plaintiffs would not suffer any unfair prejudice because their question was completely objectionable to the extent that it asked Mr. Lewis to reveal the substance of confidential attorney-client communications. Mr. Lewis expressly stated that he did not have any information other than what he had

11

discussed with his counsel. Thus, Mr. Lewis was instructed not to answer based on the attorney-client privilege. See Ex. A attached hereto, at 102:25-103:11.

Mr. Lewis was also instructed not to answer because the question asked him to offer opinion testimony for which he had not been designated. Mr. Lewis was designated as NCL's Rule 30(b)(6) representative to testify about various facts relating to the Norwegian Star. See Ex. A attached hereto, at 10:7-22; Ex. B attached hereto. He was not designated to offer opinion testimony and therefore was properly instructed not to answer Mr. Davis's question asking for an opinion. See Ex. A attached hereto, at 103:13 – 104: 13. Finally, the instruction was proper to the extent that Mr. Lewis was asked to provide a legal conclusion. See id. at 104:14-18.

As to (2), Plaintiffs would not suffer any unfair prejudice because, again, the question was objectionable to the extent that it asked Mr. Lewis to offer opinion testimony for which he had not been designated. See id. at 104:20-105:9.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied.

DATED: Honolulu, Hawaii, June 13, 2006.

>CADES SCHUTTE
>A Limited Liability Law Partnership
>
>/s/ Neill T. Tseng
>―――――――――――――――――
>JEFFREY S. PORTNOY
>NEILL T. TSENG
>Attorneys for Third-Party Defendant NCL (BAHAMA) LTD incorrectly named herein as NORWEGIAN CRUISE LINES, INC.

ImanageDB:654561.2