```
 1         IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF HAWAII
 3                     ---oOo---
 4
 5   JOHN GAST, individually, and as    CIVIL NO.
     Special Administrator of the        CV 0400079
 6   Estate of JACQUELINE GAST,          DAE BMK
     And as Guardian Ad Litem for
 7   His minor child,
     AMANDA RENEE GAST,
 8   and BROOKE ASHLEY GAST,
 9        Plaintiffs,
10   v
11   SUNG KI KWAK, dba SHIN.
     JIN HAWAII TRAVEL & TOUR,
12   A Hawaii Sole Proprietorship;
     CYNTHIA HATHAWAY,
13
          Defendants.
14
                                       /
15
16     REPORTER'S TRANSCRIPT OF THE PROCEEDINGS
17
18       DEPOSITION OF MATTHEW JAMES LEWIS
19          TUESDAY, SEPTEMBER 20, 2005
20   ATKINSON-BAKER
     COURT REPORTERS
21   180 Montgomery Street, Suite 800
     San Francisco, CA  94104-4266
22   800-288-3376
23
24   FILE NO.: 9F07261
25   Reported By:    Donna Covington, CSR #8507
```

CERTIFIED COPY

**EXHIBIT A**                                                    1

```
 1         Q.  Okay.  And finally, if you don't
 2  understand any of the questions that are
 3  posed to you, you have the ability to go
 4  ahead and have whoever asked you the question
 5  re-ask the question.  All right?
 6         A.  Yes.
 7         MR. O'CONNOR:  All right.  Now,
 8  we're here today -- we'll mark as Exhibit A
 9  to your deposition the 30(b)(6) Notice.
10         (Whereupon Exhibit A marked for
11  identification.)
12         MR. O'CONNOR:  And my understanding
13  is that you have been designated -- he's not
14  designated for two, right?
15         MR. PORTNOY:  Correct.
16         BY MR. O'CONNOR:
17         Q.  You've been designated in that
18  Notice to respond to paragraph number three,
19  number four, part of number five, and
20  paragraph seven.
21         Is that correct?
22         A.  That is correct.
23         Q.  Okay.  I'd like to go over your
24  background before we start on that.  First
25  off, did I ask you to state your name for the
```

1  anything about anything you learned from me
2  about any theories that other people are
3  using or --
4        THE WITNESS:  The answer is no.
5        BY MR. DAVIS:
6        Q.  So I'm not asking you what your
7  attorney told you.  I'm just asking you
8  whether you're apprised of the fact today
9  whether -- that Mr. Corrin -- that neither
10 Mr. Corrin nor the crew made any inquiry of
11 the existing passengers as to the last known
12 whereabouts of Jackie Gast?
13       MR. PORTNOY:  Well, you may ask it
14 any way you want.  But to the extent that
15 answer would call for information he's
16 received from counsel, I'm instructing you
17 not to answer.  If he has that information
18 from any other source, I don't have a
19 problem.
20       BY MR. DAVIS:
21       Q.  Okay.  Do you have that
22 information from any source other than what
23 your attorney may have told you?
24       A.  No, sir.
25       Q.  Is it your information that the

```
 1   ship's Agent failed to do anything he was
 2   asked to do?
 3          MR. PORTNOY:  Well, if you have
 4   information or you've reached conclusions or
 5   any information from persons other than
 6   counsel, please answer the question.  But if
 7   it's only things that you and I may have
 8   discussed, you're not supposed to answer
 9   that.
10          THE WITNESS:  I don't -- I do not
11   have any additional information.
12          BY MR. DAVIS:
13          Q.  Right.  And my question is to
14   you as a 30(b)(6) representative of Norwegian
15   Cruise Lines.
16          Is it the Cruise Lines' position
17   that the Ship Agent failed to do anything he
18   was asked or instructed to do?
19          MR. PORTNOY:  Well, that's a totally
20   improper question.  He's not been designated
21   for that.  I'm going to instruct him not to
22   answer.  He's not a 30(b)(6) representative
23   for that question nor answer.
24          MR. DAVIS:  He is a 30(b)(6)
25   deposition for the security staff.  And from
```

```
 1  that perspective, as a representative, this
 2  is the deposition of a corporation.
 3          MR. PORTNOY:  Sorry.  You're
 4  absolutely wrong.  None of the areas under
 5  30(b)(6) ask for opinion or other testimony
 6  regarding the conduct of anyone other than --
 7  in fact, no one.  He can testify to facts and
 8  that's all I'm going to permit him to.  If
 9  you wanted to do a 30(b)(6) asking what
10  witnesses are we going to put forward
11  allegedly to blame other people, we would
12  have done that.  So I'm instructing him not
13  to answer.
14          MR. BURKE:  I also want to object
15  because I think it's asking for some sort of
16  legal conclusion.  And I don't believe this
17  witness is competent to provide a legal
18  conclusion.
19          BY MR. DAVIS:
20      Q.  All right.  Let me ask one other
21  question, then.  And my question is to you,
22  again, as a 30(b)(6) representative to
23  testify about the security, from the security
24  standpoint, does NCI believe that the ship's
25  Agent did anything wrong in this particular
```

```
 1  case?
 2         MR. PORTNOY:  Again, it's not a
 3  30(b)(6) --
 4         MR. DAVIS:  Okay.  Just instruct
 5  him.  I want to get my record.
 6         MR. PORTNOY:  That's fine.  Okay.
 7  As you've asked the question I'm instructing
 8  him not to answer as a 30(b)(6)
 9  representative of the company.
10         BY MR. DAVIS:
11         Q.  You indicated that you received
12  a call about midnight on October 14th; is
13  that correct?
14         A.  Yes, that is correct.
15         Q.  And you were home; is that
16  right?
17         A.  Yes, I was home.
18         Q.  And do you know who was the call
19  from?  Do you recall?
20         A.  The call was from the Norwegian
21  Star.
22         Q.  Right.  Do you know who on the
23  Norwegian Star it was from?
24         A.  I believe it was the Security
25  Officer.
```