REINWALD O'CONNOR & PLAYDON LLP
A Limited Liability Law Partnership

DENNIS E.W. O'CONNOR          561
DENNIS E.W. O'CONNOR JR.    4084
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 2400
Honolulu, Hawaii 96813
Telephone: 524-8350
Facsimile: 531-8628

Attorneys for Defendants and Third-Party Plaintiffs SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR and CYNTHIA HATHAWAY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN GAST, individually, and as Special Administrator of the Estate of JACQUELINE GAST, and as Guardian Ad Litem for his minor child, AMANDA RENEE GAST, and BROOKE ASHLEY GAST,<br><br>Plaintiffs,<br><br>vs.<br><br>SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship; CYNTHIA HATHAWAY,<br><br>Defendants. | CIVIL NO. CV 04 00079 DAE BMK (Wrongful Death)<br><br>DEFENDANTS AND THIRD-PARTY PLAINTIFFS SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR AND CYNTHIA HATHAWAY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE ANY REFERENCE TO MRS. GAST'S PRIOR HISTORY OF COCAINE ABUSE AND ALCOHOL USE, AS WELL AS THE SPECIFIC NAMES AND CHARACTERISTICS OF THE PRESCRIPTION MEDICATIONS PRESCRIBED FOR HER AT THE TIME OF HER |

| | |
|---|---|
| SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship; CYNTHIA HATHAWAY,<br><br>　　　　Third-Party Plaintiffs,<br><br>　v.<br><br>NORWEGIAN CRUISE LINES, INC. and NATIONAL PARK SERVICE,<br><br>　　　　Third-Party Defendants. | DEATH FILED 5/30/06; DECLARATION OF DENNIS E. W. O'CONNOR JR.; EXHIBITS "A" - "D"; CERTIFICATE OF SERVICE<br><br>Date:　June 22, 2006<br>Time:　9:00 a.m.<br>Judge:　David Alan Ezra<br><br>Trial:　August 15, 2006<br>Judge:　David Alan Ezra |

DEFENDANTS AND THIRD-PARTY PLAINTIFFS SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR AND CYNTHIA HATHAWAY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE ANY REFERENCE TO MRS. GAST'S PRIOR HISTORY OF COCAINE ABUSE AND ALCOHOL USE, AS WELL AS THE SPECIFIC NAMES AND CHARACTERISTICS OF THE PRESCRIPTION MEDICATIONS PRESCRIBED FOR HER AT THE TIME OF HER DEATH FILED 5/30/06

### I.　　THERE IS NO PRESUMTION THAT MRS. GAST ACTED PRUDENTLY IN THIS CASE

Plaintiffs argue that Mrs. Gast's use of cocaine and alcohol as well as prescription drugs should be excluded under Rule 403. Plaintiffs state that under Murakami v. County of Maui, 69 Haw. 43 (1987) that there is a presumption Mrs. Gast acted prudently and that the drug and alcohol evidence is being put forth in an attempt to overcome this presumption. This argument is faulty for two reasons. First, Plaintiffs do not have an outright presumption in this case. The

2

court, in <u>Murakami v. County of Maui</u>, 6 Haw. App. 516 (1986), held that the jury should not have been instructed as to the existence of a presumption because (1) the instruction was superfluous--the decedent's negligence was raised as an affirmative defense by the defendant and thus, the defendant already had the burden of proving the negligence even without the presumption under Hawaii Rules of Evidence (HRE) Rule 304 and (2) under HRE Rule 303, the presumption disappeared when "evidence was introduced that would support a finding of Grant's negligence." <u>Id.</u> at 522. The court also held that the instruction was erroneous in proposing that a decedent would be held to a lesser burden of proof than a living plaintiff who could describe the occurrence. <u>Id.</u> The decedent should still be required to prove its case by a preponderance of the evidence. <u>Id.</u> In this case, Defendants have brought a claim for Plaintiffs' contributory negligence and as such no preemptive applies. Also, evidence put forward concerning Mrs. Gast's negligence was submitted in response to Plaintiffs' motion for summary judgment on this issue. Clearly, even assuming the presumption applies, there is evidence that Mrs. Gast acted negligently and the presumption is overcome.

Nevertheless, the argument begs the question, because the evidence of drug and alcohol use will be presented by Defendants Kwak and Hathaway through Dr. Kemble to show the mental state of Mrs. Gast and to support the diagnosis of borderline personality disorder. As noted below, there is relevant

evidence of use of drugs and alcohol as well as non compliance with medications, that should be presented to the jury.

## II. DRUG AND ALCOHOL USE ARE RELEVANT TO THE STATE OF MIND OF MRS. GAST AND HER PSYCHIATRIC DIAGNOSES

Plaintiffs' motion improperly states that Dr. Kemble provided no opinions in which drug and alcohol use by Mrs. Gast is linked to his opinions concerning her death.

In his letter dated November 30, 2005, Dr. Kemble notes:

"... long history of labile emotions, impulsive and sometimes self destructive behavior, suicidal thoughts and at times threats, multiple automobile accidents, marital conflicts, substance abuse, and fears of rejection and abandonment. On occasions when she felt or anticipated rejection, often out of proportion to reality, she would feel like drinking or using drugs, leaving or sometimes have suicidal thoughts ... in his deposition Mr. Magruder referred to Mrs. Gast's extreme rejection sensitivity, and fear of anger in herself or toward her from others, leading to suicidal thoughts and risk-taking behavior."

Dr. Kemble opined that based on Mr. Magruder's notes and comments in his deposition, Mrs. Gast meets several criteria for Borderline Personality Disorder, including: "frantic efforts to avoid real or imagined abandonment," "markedly and persistently unstable self image or sense of self," **"impulsivity in at least two areas that are potentially self damaging e.g. substance abuse, reckless driving, binge eating,"** "recurrent suicidal behavior, "gestures or threats

4

or self mutilating behavior," "affective instability due to a marked reactivity of mood," and "chronic feelings of emptiness." (See Exhibit "A.") (emphasis added).

In his declaration submitted to this Court, Dr. Kemble states "Mr. Magruder's records revealed several instances in Mrs. Gast's life that supported the diagnoses of Dr. Johnson of bipolar disorder and borderline personality disorder. The records of Mrs. Gast including those of Mr. Magruder that were produced more recently are consistent with diagnostic criteria for DSM IV Bipolar II Disorder 296.89. The medical records of Plaintiff including those records more recently received of Stephen Magruder are consistent with several of these diagnostic criteria including frantic efforts to avoid abandonment, a pattern of unstable relationships, impulsivity and recurrent suicidal behavior, gestures and/or threats." See Exhibit "B," Declaration of Dr. Kemble.

Further, Steven Magruder testified that when Mrs. Gast drank or took drugs, Mr. Gast would become very disappointed and angry, and would become provoked. (Exhibit "C," Deposition of Stephen Magruder at page, 24 lines 21-25.) This sometimes lead to physical altercations. Id. at lines 10-20. According to Stephen Magruder, Mrs. Gast recognized that when she became mad she carried out self destructive behaviors such as driving recklessly, taking cocaine or overdrinking, and Magruder saw it as impulsive behavior. (Id. at page 54, lines 18-25 and page 55, lines 1-5).

5

Magruder's treatment and diagnosis are clearly relevant since the more recent treating psychiatrist, Dr. Johnson, testified that her condition was chronic and that the diagnosis of borderline personality disorder came from Dr. Johnson's contact with Steven Magruder during his treatment of Mrs. Gast. Dr. Johnson stated:

> Q: ...On 5/25 what caused you to diagnose the borderline personality disorder?
>
> A: Actually, that would have been right after I talked with her therapist.
>
> Q: Which therapist?
>
> A: That would be McGruder (sic).
>
> Q: Okay. What did McGruder (sic) tell you that made you change your diagnosis?
>
> A: Well, he said that she -- he felt based on the time that he saw her that she had -- that she had displayed borderline traits and that his diagnosis had been borderline personality disorder, so I put that in.

See Exhibit "D," Excerpts of Deposition of Dr. Johnson at page 29, lines 19-25 and page 30 lines 1-5.

> Q: And so what was the pervasive pattern and instability in personal relationships, was it work, was it family--
>
> A: Both.
>
> Q: --both.

6

    A:     She had trouble interfacing with both of those.

    Q:     And we've talked about the work--

    A:     And it could have been bi-polar totally. I relied on Steve McGruder's ability, as a therapist, to diagnose that over a long period of time. He had seen her, I think, a couple years, and had hour-long sessions with her.

Id. at page 31, lines 5-14.

    Q:     …this is the first time I could find it on your 5/11 entry, that the bi-polar disorder was in partial remission, chronic. What do you mean by that?

    A:     Well, I mean what it means is that she's always going to have-- she's always going to have to worry about exacerbation of her disease. It's not like I have a cure for it. You can control bi-polar disorder, usually, but you can't cure it, and she's had it for years, that really--that's what is meant by chronic.

           Now to get her to full remission, I think the best I was ever able to do was a partial remission, but to get her in a full remission doesn't mean that she's fine and she can stop her meds because I've cured it. It's chronic.

Id. at page 28, lines 3-20.

    Q:     …it looks, from your records, like you recommended her to go see a therapist on several occasions?

    A:     Yes.

    Q:     Over several years?

    A:     Yes.

    Q:     Did she ever do that, to your knowledge?

> A:   She told me that she had contacted Steve and that he did not seem interested in treating her, returning her whole, I believe.

Id. at page 24, lines 1-10.

Clearly, the use of drugs and alcohol are important factors in the diagnosis of Mrs. Gast's borderline personality disorder. Also, Dr. Johnson testified Stephen Magruder was involved in this diagnosis while Dr. Johnson was treating Mrs. Gast. The issue of whether and/or when Mrs. Gast was abusing drugs and/or alcohol in the time before her death should go to the jury so it can understand the diagnosis as well as the level of illness that Mrs. Gast was suffering from. Her problems were clearly of long standing and they were chronic. As such, evidence of the impact of these problems and the use of drugs and alcohol, which are a diagnostic criteria for borderline personality disorder and which also involve her manic depression, are evidence that should be admitted to the jury.

### III.  LACK OF MEDICATION IS IMPORTANT EVIDENCE

There is an issue of non-compliance with taking prescribed medications. Plaintiffs point out that the autopsy shows no medication in her system. As such, the prescribed medication and its effects are relevant since Mrs. Gast had medication with her but arguably did not take it.

## IV. CONCLUSION

For the reasons above, Plaintiffs' Motion to exclude evidence of drug and alcohol use, including prescription drugs, should be denied.

DATED: Honolulu, Hawaii, June 14, 2006.

*/s/ Dennis E. W. O'Connor*

DENNIS E. W. O'CONNOR
DENNIS E. W. O'CONNOR JR.
Attorneys for Defendants and Third-Party
Plaintiffs SUNG KI KWAK, dba Shin Jin
Hawaii Travel & Tour and CYNTHIA
HATHAWAY