REINWALD O'CONNOR & PLAYDON LLP
A Limited Liability Law Partnership

DENNIS E.W. O'CONNOR         561
DENNIS E.W. O'CONNOR JR.    4084
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 2400
Honolulu, Hawaii 96813
Telephone: 524-8350
Facsimile: 531-8628

Attorneys for Defendants and Third-Party
Plaintiffs SUNG KI KWAK, dba SHIN
JIN HAWAII TRAVEL & TOUR and
CYNTHIA HATHAWAY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN GAST, individually, and as Special Administrator of the Estate of JACQUELINE GAST, and as Guardian Ad Litem for his minor child, AMANDA RENEE GAST, and BROOKE ASHLEY GAST,<br><br>Plaintiffs,<br><br>vs.<br><br>SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship; CYNTHIA HATHAWAY,<br><br>Defendants. | CIVIL NO. CV 04 00079 DAE BMK (Wrongful Death)<br><br>DEFENDANTS AND THIRD-PARTY PLAINTIFFS SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR AND CYNTHIA HATHAWAY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO SUICIDE WITH REGARD TO THE DEATH OF MRS. GAST FILED 5/30/06; DECLARATION OF DENNIS E. W. O'CONNOR; EXHIBITS "A" - "C"; CERTIFICATE OF SERVICE |

175732/04-54/DOJ

| | |
|---|---|
| SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR, a Hawaii Sole Proprietorship; CYNTHIA HATHAWAY, | Date: June 22, 2006<br>Time: 9:00 a.m.<br>Judge: David Alan Ezra |
| Third-Party Plaintiffs, | Trial: August 15, 2006<br>Judge: David Alan Ezra |
| v. | |
| NORWEGIAN CRUISE LINES, INC. and NATIONAL PARK SERVICE, | |
| Third-Party Defendants. | |

DEFENDANTS AND THIRD-PARTY PLAINTIFFS SUNG KI KWAK, dba SHIN JIN HAWAII TRAVEL & TOUR AND CYNTHIA HATHAWAY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE ANY REFERENCE TO SUICIDE WITH REGARD TO THE DEATH OF MRS. GAST FILED 5/30/06

I.  THE PRESENT MOTION IS A RESUBMISSION OF PLAINTIFFS' DAUBERT MOTION CONCERNING DRS. KEMBLE AND STONE

This Court set due dates for all motions to be brought pursuant to Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Plaintiffs filed a detailed, exhaustive motion concerning the opinions of Dr. Stephen Kemble and Dr. Stone on September 19, 2005. Opposition memoranda were filed on November 10 and December 2, 2005. Plaintiffs filed a reply memorandum on January 6, 2006. The original Daubert motion filed by Plaintiffs concerning

Dr. Kemble's opinions is still under advisement. Plaintiffs simply attempt to re-argue their original <u>Daubert</u> motion. One of the primary conclusions of Dr. Kemble is that Mrs. Gast committed suicide. Therefore, it follows that Plaintiffs' motion is simply a reassertion of their <u>Daubert</u> motion. <u>Daubert</u> and its progeny are cited and discussed in detail in the Plaintiffs' "Motion in Limine." The Court should not allow this renewed attempt to argue Plaintiffs' <u>Daubert</u> motion concerning Dr. Kemble, and it should be rejected out of hand.

## II.   DR. KEMBLE'S OPINIONS ARE BASED UPON SCIENTIFIC KNOWLEDGE

Plaintiffs, for the second time, claim that Dr. Kemble's opinions are not based upon scientific knowledge. Dr. Kemble is a board certified psychiatrist and addictive medicine specialist. Plaintiffs once again attack the opinions of Dr. Kemble claiming they are based upon conjecture and speculation while citing <u>Diviero v. Uniroyal</u>, 114 F.3d 851, 853 (9th Cir. 1997). As was noted in the original opposition memorandum, the <u>Diviero</u> case concerned a tire expert that was unable to provide any basis for his testimony whatsoever.

The "reliability" requirement of <u>Daubert</u> based upon the Rule 702, F.R.E. is that the subject of an expert's testimony be grounded in that expert's scientific knowledge. <u>Daubert v. Merrill Dow</u>, 509 U.S. 5, 79 (1999).

Clearly, Dr. Kemble is a board certified psychiatrist and addictive medicine specialist. His letters attached as Exhibits "A" and "B" are based upon his review of this matter and his training and experience as a psychiatrist and addictive medicine specialist. He provides his medical opinions about what happened.

Experts are allowed to testify concerning facts that are not in their knowledge as long as they are type of facts relied upon by an expert in that particular field. See Doe v. Cutter Biological, Inc., 971 F.2d 375, 385-386 (9th Cir. 1992).

As noted in the original opposition memoranda and submission of Dr. Kemble's declaration and November 30, 2005 report, the opinions of Dr. Kemble are grounded in his review of the matter and based upon his scientific training and knowledge. (See Exhibit "C," Declaration of Dr. Kemble.) As set forth below, Dr. Kemble provides his opinion of what occurred based upon review of Mrs. Gast's medical records and his review of the evidence concerning Mrs. Gast's actions on the day in question as well as circumstantial evidence found with her body. The opinions are based upon evidence and are grounded in the doctor's training. As such, the motion should be denied.

### III. DR. KEMBLE'S OPINIONS WILL ASSIST THE TRIER OF FACT

Plaintiffs correctly point out that there is no direct evidence of what occurred to Mrs. Gast between 10:45 a.m. on the day she failed to meet her tour and the next morning when her body was found. Dr. Kemble's opinions of what occurred are based upon his review of the evidence and his scientific medical training. This is exactly the type of situation that calls for expert testimony. Dr. Kemble provides his opinions in two letters written on March 20, 2005 and on November 30, 2005. (See Exhibits "A," "B," and "C.")

In his March 20, 2005 letter, Dr. Kemble notes that there are two major discrepancies that need to be addressed. First, there is a discrepancy between reported emotional state in Johnson and family version. These opinions go to the state of mind of Mrs. Gast at the time of her death as well as to the testimony of Plaintiffs that impacts causation and damages.

Secondly, Dr. Kemble addresses what he calls an abrupt change in Mrs. Gast's mental status before death. He notes that she left the harbor and was calm. As the tour progressed, Mrs. Gast became more anxious because of its unanticipated length. She was focused on finding ride back to the ship and was not interested in viewing lava. She became more impatient as time went on. (Exhibit "A" at page 7.) According to Dr. Kemble, Mrs. Gast then hiked ½ mile inland,

stopped to take pictures of a new lava flow, removed her shoes and with a cigarette in hand went onto a new flow and laid down. Id.

According to Dr. Kemble, there are three psychiatric explanations for this behavior. First, that she was reacting to the fact that she expected her husband to be angry with her leaving the ship and taking a long tour without telling him; secondly, that she panicked and bolted when she could not find a ride back to the ship; and thirdly, that Mrs. Gast entered a "fugue state" in which she was able to sustain purposeful actions such as suicide. Id. at 8. Dr. Kemble opined that all of these psychiatric explanations of what occurred involve deliberate self-destructive behavior by Mrs. Gast occurring over a short period of time that could not have been prevented by the actions of the tour driver, NPS, police, NCL. Id. at 9. Thus, in his opinion, her death was more likely suicide.

In his November 30, 2005 letter, Dr. Kemble reiterates that Mrs. Gast was having increasing anxiety during the course of the tour that her husband would be angry, and she was attempting to get an earlier ride. (See Exhibit B at page 2.) Dr. Kemble explains that up until 10:45 a.m., Mrs. Gast was trying to get back to ship, and that sometime between 10:45 a.m. and 11:00 a.m. she left a populated area. Her body was found ½ mile away from the kiosk. Her camera had pictures in it and she had a cigarette in her hand. Id.

6

Dr. Kemble notes that Mrs. Gast had to have known that when she left the kiosk after 10:45 a.m. and hiked out into the old lava area north of the kiosk that she was going to miss her ride back with Hathaway's tour. Id. at 3. Dr. Kemble opines that it appears likely that when she left the kiosk, Mrs. Gast did not intend to go back with her tour. Dr. Kemble explains that this is the change in intentions he is speaking of in his opinions. Id. at 3.

Dr. Kemble finds no medical reason to support a claim that Mrs. Gast was confused or disoriented when she left the kiosk. He notes she took pictures of the area she was hiking in and that she was with a cigarette in her hand, purse in her lap and supine. These facts suggest she was in control at the time of her death. Id.

Dr. Kemble's medical explanation is that she committed suicide. Id. at 4-5.

In his letter dated November 30, 2005, Dr. Kemble notes that Mrs. Gast had a:

> "…long history of labile emotions, impulsive and sometimes self destructive behavior, suicidal thoughts and at times threats, multiple automobile accidents, marital conflicts, substance abuse, and fears of rejection and abandonment. On occasions when she felt or anticipated rejection, often out of proportion to reality, she would feel like drinking or using drugs, leaving or sometimes have suicidal thoughts…in his deposition Mr. Magruder referred to Mrs. Gast's extreme rejection sensitivity, and fear of anger in herself or toward her from others, leading to suicidal thoughts and risk-taking behavior."

7

The opinions put forth by Dr. Kemble are not "pure flights of imagination" as argued by Plaintiffs' attorney. Rather, they are opinions based upon the evidence before the Court based on Dr. Kemble's medical training. The fact that Plaintiffs' attorney disagrees with the opinions is not a bellweather for their admission. The opinions meet the requirements of <u>Daubert</u> and Rules 702 and 703 and, as a result, Dr. Kemble's opinions should not be excluded, including the opinions that Mrs. Gast committed suicide.

## IV.   THE COURT SHOULD HOLD A <u>DAUBERT</u> HEARING

If the Court is considering the exclusion of any part of Dr. Kemble's opinions, then Defendants request a Rule 104 hearing be scheduled for Dr. Kemble to explain the bases of his opinions.

## V.   CONCLUSION

For the reasons above, Plaintiffs' Motion to exclude Stephen Magruder's records and testimony should be denied.

DATED: Honolulu, Hawaii, June 14, 2006.

_____
DENNIS E. W. O'CONNOR
DENNIS E. W. O'CONNOR JR.
Attorneys for Defendants and Third-Party
Plaintiffs SUNG KI KWAK, dba SHIN JIN
HAWAII TRAVEL & TOUR and
CYNTHIA HATHAWAY